## Socher's Appeal.

1. A parol trust assumed by one who by persuasion procures an absolute devise may be established in equity by the uncontradicted testimony of a single witness.

2. When a Court of Equity acquires jurisdiction for any purpose, it will proceed to determine the whole cause, although in so doing, it may adjudicate questions, which, if standing alone, would not warrant the assumption of jurisdiction.

3. When the denial in an answer is based upon information only, or a want of knowledge of the facts averred in the bill, it is not responsive, so as to require the evidence of two witnesses, or that of one witness and corroborating circumstances to overcome it.

4. A. died, leaving a will, by which he devised all his real and personal estate to his wife absolutely, upon the parol promise and agreement that she would hold said property in trust for their children, and convey so much thereof to them as she should not use in their and her maintenance.   The widow entered into the possession of said property, and subsequently, for a valuable consideration, conveyed one of testator's tracts of land to a stranger, who took without notice of the trust.   Subsequently the widow married B., and on her death devised and bequeathed absolutely to this second husband a portion of the real estate so devised to her in trust, and all the personalty.   B. having entered into possession, A.'s children filed a bill in equity to have the trust above recited declared, and a conveyance made to them of the said real estate, and an account taken of the rents and profits and other personalty, including the consideration money of the above recited conveyance, so received by B.

*Held*, that the bill would lie, and that the plaintiffs were entitled to the relief prayed for.

November 9th 1883.   Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT and CLARK, JJ.   GREEN, J., absent.

APPEAL from and certiorari to the Court of Common Pleas No. 1 of *Allegheny county*, sitting in Equity : Of October and November Term 1883, No. 230.

8 OUTERBRIDGE.—39

This was an appeal by George Socher from a decree of the said court, directing him to deliver to Catharine Hauber, Philomena Hines and others, deeds for and the possession of, certain tracts of land, which were declared by the said decree to be held by Socher in trust for Catharine Hauber et al., and also directing him to pay to said Catharine Hauber et al., the sum of $2,700.65. This decree was entered in accordance with the prayers of a bill in equity, wherein Catharine Hauber et al., were plaintiffs, and George Socher was defendant, which averred, inter alia, as follows:

That plaintiffs are the children of Alexander Wirth, who died March 6th 1870, leaving surviving him Catharine, his wife, and the plaintiffs; that (5) the said Alexander Wirth, "when in articulo mortis, was about to devise a one-third interest in his real estate to his wife for life, and an equitable share of his personal estate, but that being urged and requested by his wife to make her his sole devisee, he did so upon her express promise to care for his children, and give them the benefit of the property, and convey or assure to them so much thereof as should not be used in her own and their support;" that Catharine Wirth entered into possession of the real estate, collected the rents accruing therefrom and took possession of the personalty; that on July 3d 1871, she conveyed one of the tracts of land so devised to her to Frederick Henglesburg for $1,225, of which $225 was paid in cash and a purchase money mortgage taken for the residue; that in February 1872, the said Catharine Wirth married the defendant, George Socher, to whom on her death she bequeathed and devised all the personal estate and a portion of the real estate so devised to her by her first husband; that the defendant has taken possession of all the real and personal estate belonging to said trust, including the consideration money of the conveyance to Henglesburg and continues to hold the same. The bill therefore prayed that the trust above recited be declared; that the will of Catharine Socher, in so far as it attempts to pass to defendant any property coming to her from her first husband, be declared invalid, that an account be rendered of the personalty received by defendant; and that he be restrained from further possession of said property.

The defendant in his answer admitted most of the averments of the bill, but as to the trust alleged to exist by the fifth paragraph, replied that he " had no personal knowledge thereof but relying on information received," denied each and every allegation in said paragraph.

The court appointed James C. Doty, Esq., Examiner and Master, who, after reciting the facts averred in the bill and admitted in the answer, reported as follows:

[Socher's Appeal.]

The serious questions of fact arise from the allegations in the fifth and tenth paragraphs of plaintiff's bill. The plaintiffs aver that Alexander Wirth was induced to devise and bequeath his property to Catharine Wirth upon her promise to give his children the benefit of the property, and to convey or assure to them such portion thereof as she should not use or consume in their maintenance. The controversies are, then, whether there was any trust and, if so, what were its terms and extent. Before discussing these subjects, however, a few questions of law should be examined.

1. If the alleged trust is proved, it must be enforced in some forum. It is well settled that, in Pennsylvania, a trust may be created by parol: Brightly's Eq. Jur. § 316, and cases there cited. The jurisdiction to enforce performance of trusts arises where property has been conferred upon, and accepted by, one person on the terms of using it for the benefit of another. The former person, or owner at law, is called the trustee; the latter, or owner in equity, the cestui que trust, or beneficiary: Ib. § 315. This doctrine is applied to cases arising under wills, where a person procures a devise to be made in his favor, on a distinct declaration or promise that he will hold the land in trust, either in whole or in part, for another: Church v. Ruland, 14 P. F. Smith 432. In Hoge v. Hoge, 1 Watts 163, it was held that, if the testator be induced to make a devise by the promise of the devisee that it should be applied to the benefit of another a trust is thereby created, which may be established by parol evidence; and that this is not contrary to the Statute of Wills. Many cases might be cited in which the same principle has been applied, but the doctrine may now be considered at rest.

2. Certainly, the rights of the plaintiffs under the trust may be asserted even against the defendant. It is only a bona fide purchaser, without notice, for a valuable consideration, who will be protected when he claims under a grantor who has obtained the property by fraud, which would, as between the original parties, render its acquisition invalid: Bispham's Eq. § 202, 263. It is well settled that a trust will be enforced not only against those who are rightfully possessed of the fund as trustees, but also against all others who have obtained it without consideration, or with notice of the trust: Brightly's Eq. Jur. 273. In 2 Pomeroy's Eq. Jur. § 918, it is said: "The remedy which equity gives to the defrauded person is most extensive; it reaches all those who were actually concerned in the fraud, all who directly and knowingly participated in its fruits, and all those who derive title from them voluntarily or with notice. A court of equity will wrest property fraudulently acquired, not only from the perpetrator of the fraud, but, to use Lord Cottenham's language, ' from his children and from

his children's children,' or, as elsewhere said, 'from any persons among whom he may have parceled out the fruits of his fraud.'"

3. Assuming that the plaintiffs have established all that they allege, can they assert their rights in a court of equity? The answer discloses that the defendant is in possession of the real estate, and denies the title of the plaintiffs. Is not the remedy, then, an action at law to determine the title and dispossess the defendant? This point is urged with great earnestness by defendant's counsel. The question of jurisdiction was promptly raised by demurring to the bill, and, when the demurrer was overruled, by setting it up in the answer. The action of the court in overruling the demurrer does not conclude the Master, for, until the answer was put in, the record did not disclose that the defendant was in possession, disputing plaintiffs' title. It seems clear to the Master, although defendant's counsel denies, that the plaintiffs' title, if any, to the real estate, is purely equitable. The legal title is in the defendant, by virtue of the devise of his wife. There is nothing in the will of Alexander Wirth to vest the title in his children at any time, nor to limit the title of Catharine Wirth, his devisee and legatee. Catharine Socher did not die intestate. The legal title did not descend to the plaintiffs as her heirs-at-law. She devised and bequeathed the property to defendant by will. It is true that the trust terminated at the death of Catharine Socher, and that the plaintiffs were then entitled to the possession, if the facts are as they allege; but they seek to recover upon an equitable, not a legal title. Their contention is, that Catharine Socher was trustee for them under a parol trust, and that the defendant is affected by the trust; since he was not an innocent purchaser for value.

The devise of Catharine Socher to the defendant, in the opinion of the Master, was not wholly inoperative. It vested the legal title in the defendant, but cumbered with the trust. At common law, the purchaser of a legal title acquired the absolute property in the subject. In equity, however, if he has notice of an equitable title, he will be considered as a trustee of the legal title for the benefit of the equitable owner: Bispham's Eq. § 25. In like manner the defendant in this case, not being an innocent purchaser for value, must be regarded as a trustee of the legal title for the benefit of the plaintiffs.

The bill in this case is not an "ejectment bill." It was not filed simply to recover possession of the real estate. It involves the personalty as well as the realty. Which was regarded as the most important, does not appear. The lots are described, but their value is not stated. It avers that there were numerous stocks and other personal property, and again,

[Socher's Appeal.]

that the amount of personalty was large. The personalty, as well as the realty, was affected by the trust; indeed, the main purpose of the bill may have been to discover what personalty belonging to the trust came into the hands of the defendant, and what was expended in the education and maintenance of the plaintiffs. If the bill becomes an ejectment bill, because the evidence afterwards discloses that the realty is the principal matter in controversy, the Master is in error.

There is no question that an action of ejectment as to the realty might have been sustained. Before equity powers were expressly conferred upon our courts, it was customary, for want of a Court of Chancery, to enforce equitable rights through common law forms. After power was granted to administer relief in equity, it was first supposed that the remedy was exclusively in equity, but it was decided that such rights could still be established by ejectment. It may be superfluous to cite authorities for such familiar principles, but the following are at hand and will be referred to nevertheless: In this state, ejectment is an equitable action, and whenever chancery would execute a trust or decree a conveyance, the courts of the state, with the instrumentality of a jury, will direct a recovery in ejectment: Peebles v. Reading, 8 S. & R. 483. A valid equitable title is sufficient to sustain the action of ejectment, and this formerly was allowed upon the ground that there was no Court of Chancery in the state: Swayze v. Burke, 12 Peters R. 11; Sim's Lessee v. Irvine, 3 Dall. 425. For the want of a Court of Chancery in Pennsylvania, the owner of an equitable title was permitted to maintain ejectment to recover it: Willing v. Brown, 7 S. & R. 467; Schuylkill Navigation Co. v. Farr, 4 W. & S. 374. The Acts of Assembly, giving the courts separate equity powers, do not divest them of any part of their previous jurisdiction to afford the same relief through common law forms: Church v. Ruland, 14 P. F. Smith 432. It has also been held frequently that where the title is legal, the case is not within the jurisdiction of a Court of Equity: North Pennsylvania Coal Co. v. Snowden, 6 Wr. 488. But no case like this has been found, where the plaintiff claimed upon an equitable title, or against the defendant as trustee ex maleficio, in which it has been held that a bill in equity would not lie for want of jurisdiction.

The extension of the remedy by actions at law, to cases originally within the jurisdiction of equity, and particularly the system adopted in Pennsylvania, of administering equitable relief through the medium of common law forms, is no bar to the equitable jurisdiction of the courts for the same cause: Wesley Church v. Moore, 10 Barr 273. Parties may still, in their discretion, maintain a common law action upon an equit-

able title, or enforce their rights in a Court of Equity. The remedies are concurrent : Brightly's Eq. Jur. § 24.

The Acts of Assembly unquestionably have conferred equitable jurisdiction, in cases of constructive frauds, upon the Courts of Common Pleas of the several counties of this Commonwealth : Purd. Dig. 592, pl. 5, 8. The courts have long exercised such jurisdiction. The whole system of trusts formerly fell within the exclusive jurisdiction of chancery, although in Pennsylvania this jurisdiction is to a great extent exercised concurrently by the courts of law : Brightly's Eq. Jur. § 314. A trust ex maleficio may arise under a will ; such trust is not within the Statute of Frauds, and equity will enforce it : Church v. Ruland, 14 P. F. Smith 432.

Under the general head of particular instances of jurisdiction of chancery, 2 Pomeroy's Eq. Jur. § 919, pages 419, 420, we find : "Fraudulent bequests—Although an entire will can not be set aside on account of fraud, yet a particular devise or bequest may be impressed with a trust in favor of a third person for whom the testator's beneficial intentions have been fraudulently intercepted and prevented by the actual devisee or legatee ; and in the same manner the land descending to the heir may be impressed with a trust where he has prevented the testator from making an intended devise, by fraudulently representing to the testator that his intention will be carried into effect towards the beneficiary as fully as though the devise were made. Where a probate is obtained by fraud, equity may declare the executor, or other person desiring it, a trustee for the party defrauded." Where a particular devise or bequest has been obtained through representation and promises that it would be used for the benefit of another, equity will prevent a fraud by treating the devisee or legatee as a trustee for the party intended to be benefited : Bispham's Eq. § 199. The better opinion would seem to be that the cognizance of every case of fraud, with the single exception of fraud in obtaining a will, belongs to the court of chancery even though there may be a complete remedy at law : Bispham's Eq. § 200, 257. In the case of Barnesley v. Powel, 1 Ves. Sen. 284, Lord HARD-WICKE says that fraud in making or obtaining a will must be inquired into and determined by the Ecclesiastical Court, but that fraud in procuring a will to be established in that court—fraud, not upon the testator, but upon the person disinherited thereby,—might be the subject of inquiry in chancery.

Equity seems the most appropriate remedy for this case. The remedy granted by courts of equity, in matters of accident, mistake and fraud is more complete, adequate and perfect, because equity uses instruments and proofs not accessible at law, and, also, because the relief adapts itself to the special circum-

stances of each particular case—adjusting all cross equities, and bringing all the parties in interest before the court, so as to prevent multiplicity of suits and interminable litigation.   Courts of law, on the other hand, cannot do more than pronounce a positive judgment in a set formulary, for the plaintiff or defendant, without professing or attempting to qualify that judgment, according to the relative equities of the parties.   The forms of proceeding in the courts of common law often will not admit of such an investigation of the matter in those courts as will enable them to do justice.   The parties claiming under a deed or will, therefore, in many cases, have an advantage in proceeding in a court of common law, which it is against conscience they should use : Story's Eq. Jur. § 437.   The flexibility of courts of equity, too, in adapting their decrees to the actual relief required by the parties, in which their proceedings form so marked a contrast to the proceedings at common law, is illustrated in a striking manner in cases of accident, mistake and fraud.   If a decree were in all cases required to be given in a prescribed form, the remedial justice would necessarily be very imperfect, and often wholly beside the real merits of the case :   Ib. § 439.

The conclusion is that the court has jurisdiction in equity, and that the whole controversy may there be determined.   It is scarcely necessary to refer to the well known principle that when a court of chancery acquires jurisdiction for any purpose, it will, as a general rule, proceed to determine the whole cause, although, in doing so, it may decide questions which, standing alone, would furnish no basis of equitable jurisdiction : Pomeroy's Eq. Jur. vol. 1, § 37; McGowin v. Remington, 2 J. 56.

4. The defendant has not asked the Master to recommend the court to direct an issue to be framed to try the fact of the parol trust.   He does, indeed, in his answer, claim the right to have all questions touching the alleged title of plaintiffs to the real estate mentioned in the bill, determined by a court and jury. But he denies the jurisdiction of the court altogether, and does not ask for a feigned issue to be certified out of chancery. Still, as parol trusts are not favored, and should be scrutinized with care, the Master has considered this question ; but has come to the conclusion that there is no necessity to award an issue in this case.

The rule in such cases is succinctly stated in Brightly's Eq. Jur. § 754 : "In chancery, the awarding of a feigned issue is a matter not of right in the parties, but of discretion in the court, to satisfy its conscience as to doubts concerning the facts of the case.   It is the practice and the undeniable jurisdiction of the court to decide on the fact as well as the law, and the awarding of an issue rests in sound discretion.   It would be

an abuse of that discretion, and the creation of a great and unnecessary expense to award an issue when the truth of the fact could be sufficiently and satisfactorily ascertained by the court itself. But, if there be contradictory evidence, between persons who are of equal credit, and have had equal opportunities of information, and the evidence be so equally balanced on both sides, that it becomes doubtful which scale preponderates, the court will, in general, direct an issue, in order to relieve and ease its own conscience, and to be satisfied, by the verdict of a jury, of the truth or falsehood of the facts controverted; lest taking upon itself decidedly a matter of such uncertainty, it might do injustice to one of the parties by determining the truth of the fact." In this case the only living witness present at the execution of the will has been examined, and there is no conflicting testimony. The witness is entirely disinterested, and there is nothing to excite a suspicion of his credibility. It would be unnecessary and useless to award an issue, and thus occasion delay and expense.

This brings us to consider the evidence as to the alleged trust. Is the evidence sufficient to prove the trust, and, if so, to what did the trust extend? In substance, it is charged in the bill that Alexander Wirth devised and bequeathed all his property to Catharine Wirth, upon her promise to hold and use it for the plaintiffs, and to convey to them such as should not be consumed in the maintenance of herself and the children. The defendant, in answer, says, that he has no personal knowledge of the matters alleged, but relying on information received, he denies each and every allegation. The rule as stated in 3 Greenl. Ev. § 287, page 250, is that, if the defendant profess a want of knowledge of the facts alleged in the bill, the answer is not evidence against these allegations, even though he also expressly denies them. In Eaton's Appeal, 16 P. F. Smith 483, speaking of an answer like the one in this case, SHARSWOOD, J., says: "We must lay aside the answer of the other defendant, as to this point; he does not speak of his own knowledge, but from information and belief only. Such an answer is not evidence even; it is pleading merely, and puts in issue the facts in dispute."

The answer, therefore, in the present case must not be regarded as evidence for the defendant, nor is it necessary that the plaintiffs should prove the parol trust by the testimony of two witnesses, or of one witness corroborated by circumstances elsewhere in evidence. The only testimony as to the trust is that of the witness, J. M. Bierl. There is nothing to contradict him. There is no conflicting evidence. He wrote the will, was present at its execution, and details the conversation which occurred. He is entirely disinterested, intelligent and trust-

worthy, so far as the Master can see. There is nothing to excite a doubt as to his credibility; and, if believed, his testimony proves the trust. The witness testifies that he asked Alexander Wirth what disposition he intended to make of his property, and that "he (Wirth) said the house he lived in, and the ground in front and in the rear, to a block of lots fronting on Negley's Run, should be his wife's; and the block of lots and his property in Lawrenceville, should be for his children, if not consumed in their maintenance." The witness and his (Wirth's) wife were present, and persuaded him to leave all the property to her, so as to avoid trouble and expense in case it should become necessary to sell or mortgage any portion of it. She assured him that no part of the property should be lost to the children through her fault; that she would hold the property in trust for the children; that the property should be disposed of just as he had intended when he wanted the will made as he first suggested.

After some hesitation, the testator consented that the will should be written as it was. The property that they were living on at the time was to be her share when a division should be made. Her portion was to extend back to the lots fronting on Negley's Run road, and the rest of the real estate was to be held by her in trust for the children. Mr. Bierl remembers distinctly that Mr. Wirth mentioned to him that he had no cash sufficient in amount to make it worth while to make a disposition of it. It seems to have been understood and admitted by Wirth that all his money had been consumed in the payment for the lot; that there were some bills still to be paid; that the rent of his real estate would not be sufficient to support the family, and that it would be necessary to sell or mortgage a portion thereof for that purpose. This is about the substance of the testimony of the witness, Bierl. It seems to the Master to be clear, explicit, and unequivocal, and sufficient to satisfy a chancellor of the existence and the extent of the trust. A trust may be established by one witness. In Kutz's Appeal, 12 W. N. 27, it was held that the testimony of one witness was sufficient to satisfy a chancellor that an assignment absolute on its face was made simply as collateral security, and the language of the court in that case would be applicable to this.

The Master accordingly finds, in addition to the other facts above stated, that Alexander Wirth devised to Catharine Wirth, his wife, the block of lots in the Twenty-first ward, of the city of Pittsburgh, fronting on the Negley Run road, and lying back of the property on Larimer avenue, excepting one lot, described in a deed of Catharine Socher and husband, dated and acknowledged June 21st 1872, and recorded in the recorder's office, in Deed Book, vol. 291, page 548, to Rev. John M.

Bierl; and also the two certain other lots at the southeast cor-
ner of Forty-second and Willow streets, in said city of Pitts-
burgh, and described in the bill of plaintiffs; and also that
certain other lot of ground situated on Liberty street, in the
city of Pittsburgh, and in that part known as Lawrenceville,
and particularly described in deed of Catharine Wirth to Fred-
erick Henglesberg, dated July 3d 1871, and recorded in Deed
Book, vol. 274, page 515 ; upon her distinct promise and agree-
ment, and in trust and confidence that she, the said Catharine,
would give their children, plaintiffs in this case, the benefit of
the property, and to convey or devise to them such portion
thereof as she should not use in the maintenance of herself and
them ; but that there was no promise or trust, or confidence, in
relation to the other realty, or the personalty devised or be-
queathed to her by her husband, Alexander Wirth.

The Master, in a supplemental report, stated an account of
the rents, profits and personalty received by the defendant
from the alleged trust, and reported that $2,608.65 was due to
the plaintiffs from defendant.

Exceptions filed to these reports by Socher were dismissed
by the court, and a decree entered that Socher execute deeds
for, and deliver possession of, the tract of land situate at Forty-
second and Willow streets, in the city of Pittsburgh, and the
tract of land in the Twenty-first ward of said city to the plain-
tiffs, and that he pay to them the sum of $2,700.65.

The defendant took this appeal, assigning for error the
action of the court (1) in not dismissing the bill for want of
jurisdiction ; (2) in holding that the evidence of one witness
was sufficient to establish a parol trust ; (5) in compelling the
defendant to account as to matters exclusively within the juris-
diction of the Orphans' Court ; and (9) in entering the said
decree.

*J. McF. Carpenter*, for the appellant.—It was error to find
the existence of a parol trust upon the evidence of one witness.
But assuming that the trust was properly established, if, as the
appellees allege, the title to the real estate in question became
vested in them on the death of Mrs. Wirth, they had a full
right to its immediate possession.   At Mrs. Wirth's death, no
title under her will could, in that event, have passed to appel-
lant, but the full legal title vested by operation of law in the
appellees.   Hence, we have, according to appellees' own show-
ing, plaintiffs with a full legal title seeking to recover possession
by bill in equity of land in the actual possession of defendant.
In such a case, ejectment affords a full and adequate remedy
and a bill in equity will not lie : Spence's Equit. Juris. Vol. 2,
844 ; Crow *v.* Tyrrell, 3 Maddock's Ch. Rep. 179 ; Hipp *v.* Bab-

bin, 19 Howard 271 ; Phelps *v.* Harris, 51 Miss. 793 ; Cavedo *v.* Billings, 16 Fla. 262 ; Girard National Bank's Appeal, 13 W. N. C. 101 ; Taylor's Appeal, 8 Id. 192 : Fox's Appeal, 11 Id. 236 ; Mark *v.* Mark, 9 W. 410 ; Steacy *v.* Rice, 3 Casey 81 ; Cooper *v.* Cooper, 1 Hals. Ch. Rep. 13.

*West McMurray* (*S. Schoyer, Jr.*, with him), for the appellees.—This was a suit to enforce a purely equitable title, arising from a trust ex maleficio, and as such was within the province of a court of Equity : Middleton *v.* Middleton, 1 Jac. & W. 96 ; Mestaer *v.* Gillespie, 11 Ves. 638 ; Reach *v.* Kennegate, 1 Ves. Sr. 123 ; Oldham *v.* Litchfield, 2 Vern. 506 ; Hoge *v.* Hoge, 1 Watts 163 ; Church *v.* Ruland, 14 P. F. S. 432. As our action was to recover personal as well as real property, ejectment would have been neither a proper nor adequate remedy. An answer, which is based upon information merely, or which only avers a want of knowledge is not responsive, and the " two witness " rule has no application : 2 Greenl. Ev. 285, 287.

Mr. Justice STERRETT delivered the opinion of the court, January 7th 1884.

The cardinal question in this case is whether the facts established by the pleadings and evidence fairly bring it within the equity jurisdiction of the court below. That question was promptly raised, in limine, by demurring to the bill, and has been strenuously insisted on throughout. If it be true, as claimed by the learned counsel for appellant, that the appellees have a full, complete and adequate remedy at law, the want of equity jurisdiction must be conceded.

The learned Master's conclusions of fact, and the law applicable thereto, are very fully and clearly stated in his report, and, for reasons that will hereafter appear, the several specifications of error relating thereto are not sustained. The facts, so far as they are essential to a proper consideration of the question of jurisdiction, are substantially these : In March 1870, Alexander Wirth, father of the beneficial plaintiffs below, died seised of certain real and personal estate, leaving a widow, Catharine Wirth, and five children, some of whom are minors. A few days before his decease he made a will, which was duly probated, whereby he devised and bequeathed all his real and personal estate, with a few unimportant exceptions, to his wife, who immediately took possession of the same, collected the rents, etc., and out of the income maintained and educated the children for a period of two years or more. The real estate, thus devised to Mrs. Wirth, consisted of four pieces of property in the city of Pittsburgh, referred to

as the homestead lot on Larimer avenue, a block of lots on Negley Run road, five houses and lots at corner of Forty-second and Willow streets, and lot on Liberty street.   In July 1871, the widow sold and conveyed the last mentioned lot to Frederick Henglesberg for $1,225, part of which was paid in cash, and for the residue, $1,000, she took a mortgage which she held until her death in June 1881.   In February 1872, Mrs. Wirth married the appellant, George Socher, with whom she lived until the time of her decease above stated.   In September 1880, she made a will, afterwards duly probated, by which she devised and bequeathed to her husband, George Socher, in fee simple, the homestead lot, on Larimer avenue, the use and occupation of all the rest and residue of the estate until her son Adam Wirth should attain the age of twenty-one years, and all her personal estate absolutely.   Immediately after her decease, appellant, as her devisee, took possession of the real and personal estate above mentioned, collected the rents, the purchase money mortgage above mentioned, etc., and continued to use and enjoy the same as his own until the date of the decree.

In March 1870, when Alexander Wirth was about making his will, he informed the scrivener that he desired to leave the homestead lot to his wife and the residue of his real estate to his children ; whereupon he was urged by the scrivener and his wife " to leave all the property to her, so as to avoid trouble and expense in case it should become necessary to sell or mort-gage any portion of it.   She assured him that no part of the property should be lost to the children through her fault; that she would hold the property in trust for the children, that it should be disposed of just as he had intended when he wanted the will made as he first suggested."   After some hesitation the testator consented that the will should be so written, and he accordingly devised all the property to his wife as set forth in the will ; but, as to all the real estate, except the homestead lot, the devise to her was upon the distinct promise and agree-ment, and in trust and confidence that she, the said Catharine, would give their children, the plaintiffs below, the benefit of the property, and convey or devise to them such portion there-of as she should not use in the maintenance of herself and them.

A careful examination of the testimony convinces us that the Master was clearly right in finding the facts above stated. The objection that the alleged trust cannot be established by the testimony of a single witness is not well taken.   Appel-lant's answer contains no such denial of the trust alleged in the bill, as makes it evidence for himself.   In his formal denial of the trust, he speaks not of his own knowledge, but from in-formation and belief only.   It is well settled that such an

answer is not evidence, it is pleading merely, and puts in issue the facts in dispute: Eaton's Appeal, 16 P. F. Smith 483 ; 3 Greenleaf's Ev. § 287. The well recognized rule in equity that a responsive answer must be overcome by the testimony of two witnesses, or one witness and corroborating circumstances, has no application to such a case as is here presented. Like every other fact averred in the bill and not expressly denied by the defendant of his own personal knowledge, the alleged trust might well be established by the testimony of a single witness; and, in this case it was fully established by the clear, distinct and positive testimony of an entirely disinterested, intelligent and trustworthy witness.

Assuming then that the trust, which is the very essence of the case, was clearly established, it is scarcely necessary to say that a flagrant breach of it has been conclusively shown and part of the trust property, together with the proceeds of other portions thereof, traced into the hands of appellant, who is a mere volunteer, standing in no better position than the original trustee would occupy if living.

While it is practically conceded that there ought to be and is a remedy for such a wrong as that complained of by appellees, it is said they have mistaken their remedy, that they should have resorted to an action of ejectment, etc. It may be true that as to a portion of the trust property, their rights might be successfully asserted in an action of ejectment, but as to the residue, including the proceeds of the Liberty street lot, sold by Mrs. Wirth in her lifetime, nothing could be accomplished by a possessory action at law. The legal title to the Liberty street lot being in Mrs. Wirth, her vendee, for value and without notice of the trust, took a good title, and the only remedy the appellees had was to follow the proceeds in the hands of appellant. It is not a sufficient answer to say that their right to the money collected by him may be asserted in the Orphans' Court against the estate of his deceased wife. The purchase money mortgage never in fact belonged to her; it was no part of her estate, and hence the jurisdiction of the Orphans' Court never attached thereto. It is very evident therefore, that, as to the entire claim of the appellees, an action of ejectment would be neither a full, complete nor adequate remedy ; and, they should not be compelled to split up their claim because part of it might be successfully asserted in one form of action, and the residue in another. While we think the jurisdiction of the court should be sustained on the ground above suggested, that is not the only ground upon which it should be based. For the reasons given and authorities cited in support thereof by the learned master, we are of opinion that it is clearly sustainable on the broader ground, stated at length in his report.

[In re Alley in Pittsburgh.]

We are not satisfied there was any error in stating the account on which the final decree is based, and hence the several specifications of error relating thereto are not sustained.

Decree affirmed and appeal dismissed at the costs of the appellant.