## Smith et ux. v. Krause

*Smyth, Coyne & Straub*, for complainants.

*D. McNichol*, for respondent.

SMITH, P. J., August 13, 1948.—1. On August 15, 1947, Katharina Krause, defendant (a widow), entered into an agreement in writing with Lewis C. Johnson, a real estate agent, by which she employed him as her sole agent to sell for her premises situate 427 E. Alcott Street, Philadelphia, at a suggested price of $11,500. Defendant signed the agreement of agency.

2. As a result of the written agreement, Lewis C. Johnson advertised the real estate for sale.

3. As a result of advertisement, William D. Smith and his wife contacted Johnson, who took them to

see the premises at 427 E. Alcott Street where, in the presence of defendant, Katharina Krause, they examined the premises.

4. William D. Smith et ux. then made a verbal offer to defendant through her agent, Johnson, to purchase the premises for the sum of $11,000.

5. Johnson, as agent for defendant, then prepared a written agreement of sale dated September 2, 1947, for the conveyance of the property from defendant to plaintiff and wife. This agreement of sale was signed by William Dewey Smith, Anna E. Smith, Lewis C. Johnson, agent for defendant, and on September 3, 1947, defendant, Katharina Krause, signed her name to the agreement, approving for the sale price of $11,000.

6. In pursuance to the executed agreement of sale, William D. Smith et ux. paid the sum of $500 on account of the purchase price, which is admitted by defendant.

7. In pursuance of the agreement of sale, Johnson fixed the settlement date of December 30, 1947, at the Wyoming Bank and Trust Company of Philadelphia, and defendant was duly notified by him of the said time and place fixed for settlement.

8. On December 30, 1947, at the Wyoming Bank and Trust Company, plaintiffs deposited the balance of the sale price in the sum of $10,600 with the trust company.

9. Katharina Krause, defendant, did not appear at the settlement, nor did she deliver an executed deed of conveyance of premises to plaintiff.

10. At the time Johnson as agent for Katharina Krause received the title search of the premises from the Wyoming Bank and Trust Company, he, for the first time, learned that the legal title to the said premises was not in the name of defendant, Katharina Krause, but was recorded in the name of her daughters, Mary E. Krause and Kathryn A. Krause, as tenants in

common. When Johnson, as agent for defendant, called to her attention the fact that the title to the property was not in her name but the name of her two daughters, she replied to him: "I am the owner; they will sign whatever I want them to sign".

11. Defendant neither signed nor had her said two daughters sign any deed of conveyance of the said premises.

12. The title search shows that defendant and her husband (since deceased) on August 14, 1941, conveyed the title of the said premises to Mary E. and Kathryn A. Krause in common.

13. When the agreement of sale was executed by defendant on September 3, 1947, she informed her agent Johnson that possession of the premises would be delivered to plaintiffs on the date of settlement, to wit, December 30, 1947.

14. After plaintiffs had entered into the agreement of sale to purchase the premises situate 427 E. Alcott Street from defendant, they entered into an agreement to sell premises 5746 N. Front Street, Philadelphia, which they at that time owned, occupied and where male plaintiff conducted his business as a decorator and painter.

15. Plaintiffs were forced to give possession of the premises 5746 N. Front Street on December 18, 1947, to their purchaser.

16. When plaintiffs moved out of their home at 5746 N. Front Street on December 18, 1947, they placed their furniture in storage at a charge of $50 per month for a period of five months, and were forced to move into one room with a friend, which they occupied for that period of time.

17. Subsequently and after this bill in equity was filed plaintiffs purchased a home at 3642 Longshore Street, Philadelphia, for which they were obliged to pay $11,200, or $200 in excess of the price paid for the property purchased from defendant.

18. The said Longshore Street property is similar in every respect as to size, number of rooms, etc., as the property on Alcott Street, and is in a comparable neighborhood.

19. Plaintiffs are obliged to spend an additional sum of $750 for papering, painting inside and outside of the Longshore Street premises, refinishing the floors, etc., to put it in the same condition as the Alcott Street house was in at the time of the alleged sale.

20. When it was determined that plaintiffs were obliged to abandon their endeavor to obtain specific performance of the agreement of sale, under advice of counsel they now bring their claim for damages as a result of a breach of contract into which they were induced to enter because of the misrepresentation and fraud practiced upon them by defendant.

## Discussion

Plaintiffs filed a bill in equity against defendant for the specific performance of the sale of a parcel of real estate situate 427 E. Alcott Street, Philadelphia, and for such damages as the court may deem fit under the circumstances. At the time of trial counsel for plaintiff stated that by reason of the recording of the title of the said property and under advice of counsel, it was felt that they could not succsssfully proceed for specific performance and therefore presented evidence to claim damages as a result of a breach of contract. Testimony was had from William D. Smith, plaintiff, Lewis C. Johnson, real estate agent, who had acted as agent for defendant, and defendant, Katharina Krause. The court had the opportunity of observing defendant as she appeared in court, and on the witness stand. She had the appearance of a well preserved, normal, mentally competent woman; in fact, no witness was examined concerning her mental processes and there is no evidence that she was not mentally competent at the time she appeared in court or at the time she signed the agreement of sale. It is admitted

that a written agreement for the employment of Johnson, the real estate agent, was signed by her. It was also admitted that a written agreement of sale for the real estate was signed by her and that a check made payable to her as part payment of the purchase price was endorsed by her to her married daughter, Mary E. Searle, who with another daughter, Kathryn, has legal title to the real property as tenants in common.

In the agreement of sale dated September 2, 1947, and approved in writing by defendant on the following day, it provides for the amount of the purchase price, of the down payment on account, and also the date of settlement. This defendant was aware of when she hired the real estate agent to sell the premises at 427 E. Alcott Street, when she approved in writing the agreement of sale on September 3, 1947, and when she received a check in part payment in the sum of $100, that she did not hold a legal title in evidence of ownership of the said premises. The evidence shows that when plaintiffs examined the premises before signing the agreement of sale that defendant was in possession of the premises and was residing therein. Later, on October 19, 1947, on the same premises and in the presence of her daughter, Mary E. Searle, and son-in-law, Stanley Searle, defendant stated to plaintiffs that she was not going to sell the house and that there was nothing plaintiffs could do about it. The evidence also shows that one of her daughters, Mary E. Searle, was aware of the transaction and that she advised the real estate man, Johnson, to hold a second check which he had received from plaintiffs as a payment on account, until her mother returned from a visit to the South.

It seems reasonable to assume that defendant exercised dominion over this property and that either her daughters held title as straw parties for her, or at the time she was acting as their agent. The fact that the first check paid on account in the sum of $100 was

endorsed by defendant to one of her daughters and deposited in her bank account by the latter, tends to confirm this assumption. At any rate, defendant held herself out to plaintiffs as the owner of this property.

The primary defense is based upon a covenant in the agreement of sale: "Title to be good and marketable and such as will be insured by any reasonable title insurance company; otherwise the buyer should be repaid his deposit money paid on account and shall be reimbursed for the cash outlay which he may have been put to for title insurance and drawing papers". This covenant in the agreement of sale primarily has to do with the protection of the vendee and in order to clear up any question that may arise without being forced to maintain an action at law: La Torre v. Edelsman, 22 Dist. R. 845; Srolovitz v. Margulis 35 Pa. Superior Ct. 252.

It is inconceivable that a person misrepresenting herself as the owner of real estate may take advantage of this covenant. She was well aware of the fact that the legal title to the property was not recorded in her name and that she therefore held no title that was marketable or insurable. She has testified that she did not enter into the conveyance because her daughters would not permit it but in view of the fact that at least one of them was aware of what she was doing, this defense is not substantial. There is no doubt that she held herself out to plaintiffs as the owner of this property, and in doing that she was guilty of a willful and material misrepresentation of a substantial fact which resulted in damages to plaintiff. Being guilty of bad faith, she is responsible not only for the money paid and the expenses of settlement, but for damages arising from the loss of the bargain to the vendee.

In Seidlek v. Bradley, 293 Pa. 379, 383, it was held that "any unjustified failure to perform a written contract, whether this failure be fraudulent or not, entitles the vendee to damages for loss of his bargain".

It may be conceded that signing of a written agreement for the sale of real estate in which the vendor has no apparent title, may not of itself create an equitable title in the vendee. However, since equity has assumed jurisdiction, the court may consider the question of damages growing out of the breach of contract: Hully v. Havens, 3 Luz. 185. In the case of Socher's Appeal, 104 Pa. 609, 615, it was held:

"It is scarcely necessary to refer to the well known principle that when a court of chancery acquires jurisdiction for any purpose, it will, as a general rule, proceed to determine the whole clause, although, in doing so, it may decide questions which, standing alone, would furnish no basis of equitable jurisdiction: Pomeroy Eq. Jur. Vol. 1, sec. 37; McGowin v. Remington, 2 J. 56"; Fleming et al. v. Adamson et al., 321 Pa. 28, 32.

As the result of this misrepresentation on the part of defendant plaintiffs sold their own home and had to vacate it on December 18, 1947. When it was ascertained that plaintiffs could not possess the Alcott Street property, they were forced to place their furniture and personal effects in storage at a rental of $50 per month and for a period of five months and they were compelled to occupy one room in the home of a friend until they could procure the home on Longshore Street in the City of Philadelphia. This Longshore Street property is of the same general size and constructive appearance as the Alcott Street property, but it cost $200 more to purchase it. In addition, it was not in the same physical condition of repair as the Alcott Street house and a reasonable estimate of what it will cost plaintiffs to paint, paper and plaster it to make it substantially similar to the Alcott Street property, is in the sum of $750. These items appear to the chancellor to be reasonably fair and naturally flowing from the breach of the agreement by defendant.

Plaintiffs also claim for the damage of what it cost them to get their meals in restaurants and what it would have cost them eating in their own home. We

however believe that this claim is too vague and indefinite and it is disallowed. We likewise disallow the claim of plaintiffs for the loss of business by William D. Smith while living in the home of a friend, because he was compelled to leave his home where he had conducted a painting and decorating business.

### Conclusions of law

1. Since this court has assumed jurisdiction in the matter before it, in order to afford proper relief to complainants, it will dispose of the whole controversy even to the extent of ordering a payment of money.

2. Defendant fraudulently misrepresented herself as the owner of the Alcott Street property at the time she entered into an agreement of sale with plaintiffs.

3. Plaintiffs are entitled to damages for the return of the deposit money paid, in the sum of $500, the expenses of settlement, to wit, title company charges in the sum of $100, recording $3.75, acknowledgment $.75, conveyancing $35, or a total of $139.50.

4. Plaintiffs are entitled to recover the sum of $200 paid in excess for the property which they were compelled to purchase on Longshore Street in lieu of the one on Alcott Street, which was not conveyed to them by the defendant.

5. Plaintiffs are entitled to recover the sum of $750 damages, being the expenses necessary for placing the Longshore Street property in a similar condition as the Alcott Street property at the date of the said settlement.

6. Plaintiffs are entitled to recover the additional expenses for room and storage space for their household effects, to wit, at the rate of $50 per month for a period of five months, or a total of $250.

### Disposition of requests for findings of fact and conclusions of law

As to plaintiffs' request for findings of fact the court makes the following disposition: Nos. 1 to 10, inclu-

sive, and no. 12 are affirmed; no. 11 is refused. As to defendant's request for findings of fact, nos. 1 to 4 are refused; nos. 5, 6 and 7 are affirmed.

As to plaintiffs' request for conclusions of law, nos. 1 to 7, inclusive, are affirmed; nos. 8, 9 and 10 are refused. As to defendant's request for conclusions of law, nos. 1, 2, 3 and 5 are refused; no. 4 is affirmed generally.

### Finding of court

And now, to wit, August 13, 1948, the bill in equity as filed by plaintiffs against defendant is made absolute, and damages are awarded against defendant in the sum of $1,839.50, being made up as follows:

$500.00 money deposited by plaintiffs
139.50 settlement expenses
250.00 storage expenses
200.00 excess for purchase of similar property
750.00 to place the property in a comparable condition.