THE STATE OF NEBRASKA, EX REL. CHARLES S. GREGORY, v. SCHOOL DISTRICT No. 24 IN ADAMS COUNTY.

1. **School District Bonds.** Under the power given by sec. 30 of the general school law, Gen. Statutes, 966, to school districts, "to borrow money," the authority to do this by the issue and sale of its negotiable bonds is implied.

2. ———: ORGANIZATION OF SCHOOL DISTRICTS: IRREGULARITIES IN, NO DEFENSE. Irregularities [in the organization of a school district are no defense to an application for a writ of mandamus to compel the payment of its bonds.

3. ———: ———: LEGAL ORGANIZATION PRESUMED. After a school district has exercised the franchises and privileges "thereof for the term of one year" its legal organization will be presumed as to all of its corporate acts.

ORIGINAL application for a mandamus to compel the levy of a tax to pay school district bonds placed on market and sold to plaintiff a *bona fide* purchaser for value.

*Harwood & Ames,* for relator.

*Copps & Tanner,* for respondent.

LAKE CH. J.

Two grounds are taken by counsel for the respondent against the allowance of a peremptory writ. The first of these is that when the election was held at which the bonds in question were voted, said district had not yet been fully organized, and was therefore incapable of authorizing its officers to issue them.

It must be conceded that considerable irregularity attended the organization of this district, but there is nothing to show that there was any bad faith on the part of any one connected therewith. The principal irregularity was in the election of the district officers. This ought to have been attended to at the first meeting, held October 15th, 1872, which was called by the county superintendent for that particular purpose, but for some undisclosed reason was postponed to the 6th of November following. This was certainly a plain disregard of the direction of the statute on the subject, as will be seen by reference to secs. 3 and 12 of the general school law then in force. Gen. Statutes, 962, 963.

But we are of the opinion that this irregularity is now of no consequence. Nobody objected at the time to the course pursued; all seemed to have been satisfied, and objection now comes too late. As a body politic this school district had its inception in these irregular steps, and has continued an existence then begun until now. Having given to the district its life, the effectiveness of these steps ought not now, after the lapse of over nine years, to be called in question.

Although the statute points out minutely and clearly the steps to be taken in the orderly formation and organization of school districts, its framers evidently anticipated that there would be instances of failure to observe them fully, and therefore provided that "every school district

shall in all cases be presumed to have been legally organized when it shall have exercised the franchises and privileges of a school district for the term of one year." Sec. 16, Gen. Statutes, 964.

This section is exceedingly comprehensive. Its terms are sweeping. It applies, as its language clearly imports, "in all cases" wherein the doings of a district, as such, are called in question or in any way involved, as well to acts during the first year, and from which this presumption arises, as to those performed afterwards. So far, therefore, as concerns the capability of the district to take upon itself the obligation of a borrower of money, its complete organization at the time it assumed to do so must be indisputably presumed.

The second ground taken is, that even if the district at the time in question had the power to borrow money with which to build a school-house, it could not lawfully do so by the issue and sale of bonds, as was done in this case. The propriety of raising money by the method adopted by this school district may well be doubted. But the legality of doing so is a different thing altogether.

By sec. 30 of the school law, Gen. Statutes, 966, it is provided that: "Any school district shall have power and authority to borrow money to pay for the sites for school-houses, and to erect buildings thereon, and to furnish the same, by a vote of the qualified voters of said district present at any annual meeting, or special meeting; *Provided*, that a special meeting for such purpose shall be upon notice given by the director of such district at least twenty days prior to the day of such meeting, and that the whole debt of any such district at any one time, for money thus borrowed, shall not exceed five thousand dollars."

It is a matter of general notoriety in this state that from the enactment of this section in 1869 to the present time, the method usually if not always adopted for raising money under it has been the sale of school district bonds

at various rates of discount. And this has been done, not only without question by the people of the districts themselves, who were of course the ones chiefly interested in the matter, but also with the acquiescence and evident approval of the legislative authority of the state; for, although indulged in excessively in some localities, the practice was permitted to continue without interference until by the passage of the act of February 26th, 1879, " to provide for the issuing and payment of school-district bonds," which, in addition to expressly authorizing it as a mode of obtaining money for school-house purposes, does little more than, by suitable provisions, to guard against abuses that had before obtained.

In addition to these considerations, which of themselves would constrain us to hold that the issue of these bonds was a lawful mode of borrowing money by the district, the practice, under similar authority, has the approval of several adjudged cases, prominent among which is that of *Rogers v. Burlington,* 3 Wall., 654, in which it was held that as a means of borrowing money to aid a railroad company a municipal corporation might issue its bonds, to be sold by the company for that purpose. And similar in principle is the ruling in *Police Jury v. Britton,* 15 Wall., 566, and in *Kelly v. Mayor,* 4 Hill, 263. The power " to borrow money" having been expressly given, without direction or restraint as to the mode of doing it, everything necessary to make that power effectual or requisite to attain the end in view is implied.

Being of opinion that the bonds in question are valid, and that it is the duty of the school district to pay them, a peremptory writ must be awarded as prayed.

WRIT AWARDED.