FRED KOCKROW ET AL., APPELLEES, V. JAMES S. WHISENAND ET AL., APPELLANTS.

FILED FEBRUARY 28, 1911. No. 16,843.

1. **School Districts:** ORGANIZATION: PRESUMPTIONS. "After a school district has exercised the franchises and privileges thereof for the period of one year, its legal organization will be conclusively presumed, whatever may have been the defects and irregularities in the formation or organization of such district." *State v. School District*, 42 Neb. 499.

2. ———: ISSUANCE OF BONDS: SUBMISSION OF QUESTION. A petition of electors in a school district organized and operating under subdivision XIV, ch. 79, Comp. St. 1909, is not a prerequisite to the submission by the board of education of such district to the voters thereof of a proposition for the issuance of school bonds to be used by said board in borrowing money for school purposes; but an election may be called and such proposition submitted upon a vote of two-thirds of the members of the board of education of such district.

3. ———: VARIANCE IN NAME: VALIDITY OF CONTRACTS. Where the name of a school district is given in the statute, and such school

district upon its organization and for many years thereafter, without protest or objection by either the state or the taxpayers or legal voters residing in said district, uses a name in which the words contained in the statutory name are to some extent transposed, and also adds a number to said name for purposes of designation or convenience, such variance in the name will not invalidate acts done or contracts entered into by said school district.

APPEAL from the district court for Clay county: ROBERT C. ORR, JUDGE. *Reversed with directions.*

*C. H. Epperson* and *A. C. Epperson,* for appellants.

*M. L. Corey, P. E. Boslaugh* and *S. W. Christy, contra.*

FAWCETT, J.

Plaintiffs brought suit in the district court for Clay county to enjoin the defendants from issuing, registering and selling school bonds to the amount of $20,000, proposed to be issued for the purpose of building an addition to the high school building in the city of Harvard. A perpetual injunction was granted as prayed. Defendants appeal.

A number of questions are argued, but we deem it necessary to only consider three of the points presented: (1) The statute of limitations. (2) The necessity of a petition by one-third of the qualified electors of the district prior to the submission of the question of a bond issue to the voters. (3) The alleged discrepancy in the name of the school district in the submission of the proposition and in the ballots used at the election. These we will consider in the order named.

1. It is contended by plaintiffs that the school district never had a legal organization; in fact, that it was not possible for it to ever have had a legal organization, for the reason that the city of Harvard, which forms a part of the district, never had at any one time a population of more than 1,500 inhabitants, and that all of its acts in re-

44

lation to the proposed bond issue are therefore void. In the stipulation of facts, upon which the case was submittted to the district court, it is admitted that the city of Harvard never had a population of 1,500; that no petition signed by one-third or any other number of the qualified voters of the district was ever presented to the board, requesting that a vote be taken for or against the issuance of the proposed bonds; that at the election called for voting upon the bond issue there were cast 524 votes, 276 being cast for and 248 against the proposition; that in the proceedings leading up to the submission, and in the resolution, the notice of submission and the ballots used at the election, the school district was not designated as "The School District of Harvard, in the County of Clay, in the State of Nebraska," but was in all of those proceedings designated as "Harvard School District' No. 11, Clay County, Nebraska," or as "Harvard School District No. 11 of Clay County, Nebraska;" that subsequent to April 18, 1887, annually, two members of the board of education of the district were elected at the time of the general city election; that the members of the board qualified on or before the first Monday in May following their elections, respectively; that the regular meetings of the board had been held on the first Monday of each month since May 1, 1887; that the district had continued from that date to the time of the commencement of the suit, its board performing the regular duties and exercising all the powers of a board of education; that in April, 1893, the board of education of Harvard school district issued $15,000 bonds upon the authority of an election held in the district; that such bonds were issued in the name of "Harvard School District No. 11 of Clay County, Nebraska;" that on June 16, 1904, the district conveyed two separate tracts of land by separate deeds, signed "Harvard School District No. 11, by A. J. Moger and Jesse F. Eller;" that on March 19, 1910, the district purchased a one-acre tract of land, and upon September 2, 1901, purchased another tract, and in each instance received title by warranty deed, in which

the district was named as "The School District No. 11 of
Harvard, in the County of Clay, in the State of Nebraska;"
or "The School District No. 11 of Harvard, in Clay
County, Nebraska;" that the school district has been
designated upon the records in the office of the county clerk
and the office of the county treasurer of Clay county as
"Harvard School District No. 11 of Clay County, Ne-
braska," and in that name has levied taxes which have
been paid by the taxpayers of the district without objec-
tion to the use of said name; that the county super-
intendents of the county have frequently in their official
correspondence with the board designated and referred
to said school district by the use of the words "No.
11" for the purpose of designating the same; that the
boards of education of said district have, since May, 1887,
employed superintendents of public instruction for various
periods of time, in one instance for the period of three
years; that no action has ever been instituted by plaintiffs
or any one else or by the state to question the right of the
district to operate under subdivision XIV, ch. 79, Comp.
St. 1909, and no written objection thereto has ever been
filed with any county superintendent or with the boards
of education of said school district; that the plaintiffs in
this suit each voted at the election here in controversy,
and neither plaintiffs nor any other taxpayer or legal voter
of said school district have or has ever made objection,
prior to the institution of this suit, to the use of the name
intended to designate said school district in the call for
an election upon the ballots used thereat; that at the
election held July 1, 1907, 164 votes were cast; that at the
election in 1908, 410 votes were cast; that the election for
the bonds in controversy was called by the consent of five
members of the board of education, expressed at a regular
meeting of said board at which only five members were
present; that plaintiffs have been residents and taxpayers
and legal voters in said district for from 6 to 23 years. It
thus appears that this school district has been in existence
and its board of education performing all the functions

and duties of a board for over 23 years, without any objection either by the state or by any resident, legal voter or taxpayer of the district. Its elections were participated in by the plaintiffs, one of whom, the evidence shows, himself served for a period of three years as a member of the school board.

If this were a case of first impression, we would not hesitate to hold that the legality of the organization of this district cannot now be inquired into; but no such responsibility is involved, as we find ample authority to support such a holding. Section 8, subd. III, ch. 79, Comp. St. 1909, which has been in force for many years, provides: "Every school district shall, in all cases, be presumed to have been legally organized when it shall have exercised the franchises and privileges of a district for the term of one year." In *State v. School District*, 13 Neb. 78, we held: "After a school district has exercised the franchises and privileges 'thereof for the term of one year' its legal organization will be presumed as to all of its corporate acts." In the opinion by LAKE, C. J., it is said: "This section is exceedingly comprehensive. Its terms are sweeping. It applies, as its language clearly imports, 'in all cases' wherein the doings of a district, as such, are called in question or in any way involved, as well to acts during the first year, and from which this presumption arises, as to those performed afterwards. So far, therefore, as concerns the capability of the district to take upon itself the obligation of a borrower of money, its complete organization at the time it assumed to do so must be indisputably presumed." In *State v. School District*, 42 Neb. 499, we held: "After a school district has exercised the franchises and privileges thereof for the period of one year, its legal organization will be conclusively presumed, whatever may have been the defects and irregularities in the formation or organization of such district." In the opinion by NORVAL, C. J., after quoting the section of the statute above set out, it is said: "It is conceded that, under the foregoing provision, if there had been nothing at fault in the

formation and organization of school district No. 19 but
mere irregularities, its legal organization would be pre-
sumed.   It is, however, contended that no such presump-
tion exists where the jurisdictional steps prescribed by the
statute for the erection of a school district have not been
taken.   In other words, where there has been a total dis-
regard of the requirements of the statute in the formation
of a school district the organization is void on its face,
and in such case the section quoted above does not apply.
We are not willing to place so narrow or limited a con-
struction upon the statute.   Had the legislature intended
that the section should apply alone to the districts where
but mere formal defects or irregularities appear in their
organizations or formations, it would have said so; but in-
stead it has used language susceptible of but one construc-
tion, and that is, that the presumption of legal organiza-
tion after the lapse of a specified period applies to 'every
school district' and 'in all cases.' "   The opinion then
quotes from the opinion of Chief Justice LAKE in *State v.
School District,* 13 Neb. 78, the language which we have
already above quoted.   *State v. School District,* 13 Neb.
78, was an original application for mandamus, and *State
v. School District,* 42 Neb. 499, was a proceeding in *quo
warranto.*

   In *State v. School District,* 54 Minn. 213, the supreme
court of Minnesota had under consideration a statute
identical with ours, except as to the words "in all cases,"
which appear only in our statute.   The action in that case
was by the attorney general upon an information in the
nature of *quo warranto.* The court made short work of the
case in the following language.   "We do not find it neces-
sary to follow counsel in their discussion of the question
of the validity of the action of the board of county com-
missioners in establishing the district or the question of
the discretionary power of the court in such cases, because,
in our judgment, the proceeding was barred by the stat-
ute."   We adopt the language of Mitchell, J., in the short
opinion filed as follows: "If these municipalities are sub-

ject to be called into court to defend their original organ-
ization, and be subject to dissolution, after they have gone
on raising taxes, buying property, contracting debts, and
exercising all their usual franchises for years, the mis-
chief and embarrassment that might ensue would be in-
calculable.   These were the evils which the statute was
designed to prevent by providing that, after a school dis-
trict had exercised the franchises and privileges of a
district for one year, the legality of its organization should
not be questioned.   To hold that the presumption is dis-
putable, and merely shifts the burden of proof, would
render the statute of very little value.   The suggestion is
made that the presumption applies only to the 'organiza-
tion' (that is, the action of voters in electing officers, etc.),
as distinguished from the 'establishment,' of the district
by the board of county commissioners.   To give it this
construction would also render the statute practically
nugatory."   To the same effect, construing similiar stat-
utes, are *School District v. Union School District,* 81
Mich. 339; *People v. Van Horn,* 20 Colo. App. 215; *Col-
lins v. School District,* 52 Me. 522.   Following the author-
ities above cited, we hold that the legality of the organiza-
tion of the Harvard school district, of which the defend-
ants are the board of education, cannot now be questioned,
and that it is duly operating under subdivision XIV, ch.
79, Comp. St. 1909.

Plaintiffs place great reliance in *Chicago, B. & Q. R.
Co. v. School District,* 60 Neb. 164, while defendants in-
sist that the decision there announced is wrong and should
be overruled.   An examination of the case cited will show
that in that case the point upon which this case turns was
not presented or considered.   The only question there pre-
sented and considered was whether the 1,500 inhabitants
referred to in section 1, subd. XIV, referred to the city
located in the school district, or to the entire territory of
the district; and we there held that the phrase, "having
a population of more than 1,500 inhabitants," relates to
and is descriptive of the city, and not of the district.   We

do not think it is necessary to either overrule or distinguish that case. If the question here were whether this school district was legally organized and conducting its affairs under any particular statute, or subdivision thereof, then the reasoning quoted from the opinion would apply; but when a school district has been organized, whether rightly or not, under a particular subdivision of the school law, and has thereafter conducted its affairs under that particular subdivision for more than one year (in this case 23 years), and during all of that time has elected its school board and transacted all of its business in a manner only permitted by that particular subdivision (in this case subdivision XIV), and during all of that time, as admitted by the stipulation in this case, no action has ever been instituted in court by the state or by any resident, elector, citizen or taxpayer to question the right of such school district to operate under such particular subdivision, then, if the statute of limitations is to be given any force and effect, the fact that it is a school district operating under that particular subdivision cannot be questioned. In such a case, it is not the population of the city or the population of the district which controls, but it is the particular organization of the district which cannot subsequently be questioned; and, if that particular organization cannot subsequently be questioned, the district cannot subsequently be switched over to some other subdivision of the school law, under which it has never acted and the provisions of which it has never observed or followed. We hold, therefore, that, by virtue of the statute of limitations above set out, the right of this district to continue to operate under the particular subdivision under which it has acted for so many years cannot now be questioned.

2. Was a petition by one-third of the qualified electors of the district necessary to authorize the board of education to submit the question of the issuance of bonds to the voters of the district? We think not. Section 24, subd. XIV, *supra,* provides: "That the aggregate school tax,

exclusive of school bond taxes, shall in no one year exceed
twenty-five mills; provided, that in cities of the first class
having a population of more than forty thousand a school
tax, exclusive of school bond taxes, may be levied that
will yield a revenue of $150,000 each year. But the board
of education may borrow money upon bonds which they
are hereby authorized and empowered to issue, bearing a
rate of interest not to exceed six per cent. per annum,
payable annually or semi-annually at such place as may be
mentioned upon the face of the bonds; which loan shall be
paid and reimbursed in a period not exceeding thirty years
from the date of said bonds. Provided that no bonds shall
be issued nor the question of issue submitted to the voters
without the consent of two-thirds of the members of the
board of education, and be offered in the open market and
sold to the highest bidder for not less than par value of
the dollar; and provided further than no bonds shall be
issued by the board of education without first submitting
the proposition of issuing said bonds at an election called
for that purpose, or at any regular election, notice whereof
shall be given for at least twenty days in one or more
papers published within the district to the qualified voters
of the district, and, if a majority of the ballots cast at such
election shall be for issuing bonds, said board may issue
bonds in such amount as may be named in the election
notice." The record shows that the board of education in
this case proceeded regularly, in accordance with the pro-
visions of the statute just quoted.

3. It is contended by plaintiffs that the name of the
Harvard school district is fixed by statute as "The School
District of Harvard, in the County of Clay, in the State of
Nebraska," and that the designation of the board as "Har-
vard School District No. 11, Clay county, Nebraska," is
such a variance from the name given by statute as to ren-
der the proceedings of the board void. This objection, in
the light of the stipulation of facts, is too technical for
consideration. None of the plaintiffs suffered thereby, as
they were all present and voted at the election, and the

stipulation shows that the vote cast at this election was the largest cast at any election for a number of years. The election was held at the usual voting places, was duly advertised in the local paper, and the fact of the election being held was evidently well known by all the voters of the district. The record shows that the name used in the proceedings leading up to the election and upon the ballots is the name by which the district has been known and by which it has transacted its business ever since its organization, even in the buying and selling of real estate. It is not alleged that such use of the name was fraudulent, or that harm resulted therefrom, or that any one was misled, hindered or delayed, nor was any objection interposed at or prior to the election or at any time prior to the commencement of this suit. To use a number in connection with the name for purposes of designation or convenience is mere surplusage, and we think it would be "straining at a gnat" to hold that such use would invalidate any proceedings taken by the board of a school district.

The judgment of the district court is therefore reversed and the cause remanded, with directions to enter a decree dissolving the injunction heretofore granted and sustaining the validity of the bonds in controversy, in harmony with the views expressed in this opinion.

REVERSED.

SEDGWICK, J., dissenting.

The attorneys for the plaintiffs mistakenly contended that the school district had no existence because it was not organized under the right section of the statute. That proposition is very much discussed in the majority opinion, and there is no doubt that, the school district having acted as such for more than a year, is a *de facto* corporation fully qualified to act as a school district. The cases cited are collateral attacks upon the existence of the district, and, being such, are determined by the statute itself. This case, it seems to me, is very different; there is no doubt that a school district exists and has the powers

necessary to a school district to conduct its schools and
other necessary duties, but the question in this case is
whether a school district can transfer itself from one class
to another so as to greatly enlarge its powers, and that, as
it seems to me, is the precise question that was stated and
decided in *Chicago, B. & Q. R. Co. v. School District*, 60
Neb. 164. In that case the railroad company tried to en-
join its taxes, claiming that the school district was or-
ganized as this school district now claims to be organized
under subdivision XIV. If it was of one class, the class
created by subdivivison XIV, it could not levy more than
2 per cent. taxes on the valuation. It attempted to levy
3.5 per cent., and the question was whether it belonged to
the one class or the other. It does not seem to be optional
with the school district to classify itself. The statute is
mandatory. It describes the kind of territory it is legis--
lating for—a city with 1,500 inhabitants—and then says,
"shall constitute one school district," and may vote bonds
without a prior petition of the voters, so that the statute
itself absolutely fixes the status of the school district as to
whether it is under subdivision XIV or under the general
school law. *Chicago, B. & Q. R. Co. v. School District,
supra,* so considers it, and I think correctly; and it says
that the class to which the district belongs is fixed by the
statute, and depends upon the population of the city, and
not upon the population of the district. It refuses to en-
join the tax because the city of Minden does not contain
1,500 inhabitants, and therefore the statute would not
place it in the class described in subdivision XIV, but in
the other class.

The purpose of the statute that provides that, where a
school district has operated for a year or more, it shall be
deemed a corporation and qualified to act as a district is
very plain. It is pointed out in the cases that are cited in
the majority opinion. Some of them were actions in *quo
warranto* to dissolve the district, and the court takes oc-
casion to point out what the effect would be if a school
district should be so dissolved. The ordinary procedure,

to appoint a receiver to take possession of the property and administer it, or any other recognized procedure upon the dissolving of a supposed corporation, would be very disastrous in such case. But surely the purpose of the statute was not to enable a school district, which had been by the statute placed in one class, to transfer itself into another and so enlarge its powers. I cannot conceive what would be gained by such a law as that, or why the legislature should have any such purpose. The majority opinion overrules the case of *Chicago, B. & Q. R. Co. v. School District, supra,* in very few words. It is virtually said that if the court then had known of this statute, or if this statute had been relied upon, the decision in that case would have been very different; that is, that the decision is entirely wrong, but the court was excusable because it was not told of the statute providing that when a district has existed for one year it could do whatever it chose to do. I think that the decision in that case is right and ought to be followed.

ROSE, J., also dissents.