IRA O. GRIGGS ET AL., APPELLEES, v. SCHOOL DISTRICT NO. 76 OF WAYNE COUNTY, NEBRASKA, ET AL., APPELLANTS.

40 N. W. 2d 859

Filed January 27, 1950. No. 32717.

*Mark J. Ryan* and *Joseph G. Rogers,* for appellants.

*Siman & Olds,* and *Budd B. Bornhoft,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CARTER, J.

The plaintiff Griggs commenced this suit as a resident taxpayer of School District No. 76 of Wayne County against such school district and its officers to enjoin the expenditure of school district funds and the entering into of agreements in regard to the operation of a school, either grade or high school, unless approved by the legal voters of the district. Other taxpayers joined plaintiff in the suit. An injunction is also sought to restrain the operation of a high school by such district under any circumstances. The plaintiffs also ask that the defendants be enjoined from changing the site of the school in the district and from leasing buildings for school purposes without the authorization of the legal voters of the district. From a decree, granting generally the relief sought by the plaintiffs, the defendant district and two of its defendant officers appeal.

The evidence shows that School District No. 76 was organized in 1895 and has continued in existence since that date. It is stipulated in the record that high school subjects have been taught in all four grades in high school in the district for 24 years and that students have been graduated and diplomas issued each year. It is agreed that during the school year ending in 1948 there were 29 pupils attending grade school and 10 attending high school. It is further stipulated that the electors of the district have not at any special or annual meet-

ing voted on the question of discontinuing the high school in said district. The record shows that the high school was approved by the Superintendent of Public Instruction for the purpose of qualifying the district to receive free high school tuition from other districts until August 19, 1948, it having been determined as of that date that a high school was not to be conducted in the district for the school year commencing the following September.

The evidence shows that on April 21, 1948, the schoolhouse for School District No. 76 was destroyed by fire and that it has not been replaced. The school year was completed by the unanimous action of the school board in leasing a property known as Madsen Hall in which to conduct grade school and a private residence in which high school classes were conducted. No action was taken at the annual meeting held on June 9, 1948, for the leasing of Madsen Hall or other buildings for school purposes. No such action was taken subsequent to the annual meeting except that on September 24, 1948, the voters of the district voted against the leasing of Madsen Hall. The record also shows that no change of site for the schoolhouse has been authorized by the legal voters of the district, nor has an expenditure of funds been authorized by the electors to improve any building or buildings for school purposes which are not owned by the district. On July 20, 1948, the electors defeated a proposed bond issue to finance the construction of a new school building.

It appears that a disagreement between the board members arose as to the plan to be pursued in providing a school for the school year commencing in 1948. The moderator and director entered into an oral lease on behalf of the district board for the use of Madsen Hall prior to the commencement of the school year. They also employed both high school and grade school teachers to teach the school. Warrants were drawn in payment of teachers' salaries and other school expenses

which the treasurer refused to sign. It is the foregoing acts on the part of the district board, acting through its moderator and director, that are sought to be restrained.

It is the contention of the appellants that School District No. 76 is a district organized under Chapter 79, article 6, R. S. 1943. The duties of the board of trustees are defined by this article in part in the following language: "The trustees shall have power (1) to classify and grade the pupils in such district, and cause them to be taught in such schools and departments as they may deem expedient; (2) to establish in the district a high school when ordered by a vote of the district at any annual meeting, and to determine the qualifications for admission to such school; (3) to employ all teachers necessary for the several schools of such district; * * *." § 79-604, R. S. 1943. It is provided also by section 79-601, R. S. 1943, that such district may be organized under article 6 if it contains more than 150 children between the ages of 5 and 21 years. The record shows the number of children in the district during the 1947-1948 school year within such age limits to be 57. A high school had been conducted, as hereinbefore stated, for 24 years prior to that time.

The appellees contend that School District No. 76 is organized under Chapter 79, article 3, R. S. 1943. The duties of the board of trustees of an article 3 district are defined by section 79-503, R. S. 1943. This section in part states: "The district school boards shall have the general care of the schools, and shall have the power to cause pupils to be taught in such branches and classified in such grades or departments as may seem best adapted to a course of study which the school board of any county shall establish with the consent and advice of the Superintendent of Public Instruction. This course of study shall apply only to rural schools and shall include all subjects now required for a second grade certificate, namely: Agriculture, bookkeeping, civics, drawing, arithmetic, English composition, geo-

graphy, grammar, history, mental arithmetic, orthography, penmanship, physiology and reading." There is no statutory provision authorizing the establishment of a high school in a district organized under Chapter 79, article 3, R. S. 1943.

It is evident, therefore, that great similarity exists in districts organized under article 3 and article 6. The two pertinent distinctions are that an article 6 district is authorized to conduct a high school and must have more than 150 children of school age in the district, while an article 3 district does not have such authority and is not subject to the latter requirement. We conclude, therefore, that School District No. 76 is an article 6 school district, it being the only type of the two described which could conduct a high school.

The appellees contend, however, that School District No. 76 is not an article 6 school district for the reason that it does not have 150 children of school age residing within the district as required by section 79-601, R. S. 1943. In this respect, the proceedings for the organization of School District No. 76, had in March 1895, do not show the number of children residing in the district at that time. The school census returned under date of June 8, 1948, shows the number of children from 5 to 21 years of age to be 57. The record is silent as to the number of children of such age within the district during the intervening years. For the purposes of this suit we will assume that 150 children between 5 and 21 years of age have never resided within the district at any given time.

While it is true that it is a requirement that more than 150 children from 5 to 21 years must reside within the district in order to organize the district as an article 6 school district, the failure to meet that requirement cannot now be asserted to defeat its existing organization as an article 6 school district.

It is provided by section 79-308, R. S. 1943, as follows: "Every school district shall, in all cases, be presumed to

have been legally organized when it shall have exercised the franchises and privileges of a district for the term of one year." The record before us is plain that School District No. 76 has been organized as an article 6 district for more than 24 years. It had to be an article 6 district to conduct a high school, and it necessarily follows that it could not be an article 3 district and at the same time conduct a high school. Appellees rely upon the failure to meet the requirement that 150 children from 5 to 21 years must reside within the district, and that section 79-308 applies only to irregularities in organization and has no application to what they describe as jurisdictional defects. As to the last proposition, this court has held otherwise.

In the case of State ex rel. School District v. School District, 42 Neb. 499, 60 N. W. 912, this court in dealing with the same statute said: "It is conceded that, under the foregoing provision, if there had been nothing at fault in the formation and organization of school district No. 19 but mere irregularities, its legal organization would be presumed. It is, however, contended that no such presumption exists where the jurisdictional steps prescribed by the statute for the erection of a school district have not been taken. In other words, where there has been a total disregard of the requirements of the statute in the formation of a school district the organization is void on its face, and in such case the section quoted above does not apply. We are not willing to place so narrow or limited a construction upon the statute. Had the legislature intended that the section should apply alone to the districts where but mere formal defects or irregularities appear in their organizations or formations, it would have said so; but instead it has used language susceptible of but one construction, and that is, that the presumption of legal organization after the lapse of a specified period applies to 'every school district' and 'in all cases.'" See, also, State ex rel. Gregory v. School District No. 24, 13 Neb. 78, 12 N.

W. 927; Kockrow v. Whisenand, 88 Neb. 640, 130 N. W. 287; State ex rel. School District v. School District, 116 Neb. 202, 216 N. W. 663; State ex rel. Brown v. School District, 120 Neb. 189, 231 N. W. 782.

In Kockrow v. Whisenand, *supra*, we said: "* * * when a school district has been organized, whether rightly or not, under a particular subdivision of the school law, and has thereafter conducted its affairs under that particular subdivision for more than one year (in this case 23 years), and during all of that time has elected its school board and transacted all of its business in a manner only permitted by that particular subdivision (in this case subdivision XIV), and during all of that time, as admitted by the stipulation in this case, no action has ever been instituted in court by the state or by any resident, elector, citizen or taxpayer to question the right of such school district to operate under such particular subdivision, then, if the statute of limitations is to be given any force and effect, the fact that it is a school district operating under that particular subdivision cannot be questioned. In such a case, it is not the population of the city or the population of the district which controls, but it is the particular organization of the district which cannot subsequently be questioned; and, if that particular organization cannot subsequently be questioned, the district cannot subsequently be switched over to some other subdivision of the school law, under which it has never acted and the provisions of which it has never observed or followed. We hold, therefore, that, by virtue of the statute of limitations above set out, the right of this district to continue to operate under the particular subdivision under which it has acted for so many years cannot now be questioned."

School District No. 76 has operated as a school district since 1895. For the past 24 years it has maintained a high school. During all that time it has transacted business in the conduct of a high school without objection on the part of anyone. In so doing it performed the func-

tions of a school district organized under Chapter 79, article 6, R. S. 1943. No action has ever been instituted in court by the state, an elector, or taxpayer to question the right of such school district to operate a high school under the provisions of article 6. Under such circumstances, as stated in Kockrow v. Whisenand, *supra:* "* * * if the statute of limitations is to be given any force and effect, the fact that it is a school district operating under that particular subdivision cannot be questioned." We hold, therefore, that the right of School District No. 76 to continue to operate under article 6 under which it has acted for many years cannot now be questioned because of section 79-308, R. S. 1943.

It appearing that School District No. 76 is a district operating under Chapter 79, article 6, R. S. 1943, its officers are governed by the statutes and regulations with reference thereto. Until the legal voters in said district proceed by law to effect a change in the organization of the district, the powers of the school board remain as before. Consequently, they may conduct a grade and high school, employ teachers, and enter into contracts necessary to the performance of their duties which are authorized by law. We think the school board has the implied power in an emergency to lease buildings suitable for school purposes, subject to any limitations imposed at an annual or special meeting of the legal voters of the district. We find no statutory prohibition against such action and it would seem that a district school board in the furtherance of its duties to provide school facilities is empowered by implication to perform such functions. The changing of a school site, the construction of a schoolhouse, or the leasing of a building for permanent use must be authorized by the legal voters of the district as the statute provides. The leasing of a building to be used as a temporary school does not constitute a change of the school site within the purview of the statute.

We conclude therefore that School District No. 76, as

now organized and conducted, is governed by Chapter 79, article 6, R. S. 1943. We find further that the school board of such district is authorized to conduct a high school and to employ high school teachers. We find also that in an emergency the school board of the district is impliedly authorized to lease buildings suitable for school purposes, except as limited by the legal voters of the district. We find also that the school board is authorized to draw and deliver warrants in payment of teachers' salaries, withholding taxes, and other necessary expenses of maintaining the school. No basis exists for restraining the aforesaid acts.

The record discloses no intent on the part of the defendant members of the school board to change the schoolhouse site, or to rent a building or buildings to be used as a permanent school building, or in expending the funds of the district for other than school purposes. Under such circumstances the awarding of injunctive relief is not required.

We are of the opinion that the trial court was in error in granting the relief sought. The judgment of the district court is reversed and the cause dismissed.

REVERSED AND DISMISSED.