PLATTSMOUTH BRIDGE COMPANY, APPELLEE, v. JOHN E. TURNER, COUNTY TREASURER, ET AL., APPELLEES: SCHOOL DISTRICT No. 1, CASS COUNTY, APPELLANT.

FILED APRIL 11, 1935. No. 29248.

*Dwyer & Dwyer* and *H. A. Dwyer*, for appellant.

*Jesse L. Root, W. G. Kieck* and *W. A. Robertson, contra.*

Heard before Goss, C. J., Rose, Day, Paine and Carter, JJ., and Lovel S. Hastings and Lightner, District Judges.

Carter, J.

This is an injunction action commenced by Plattsmouth Bridge Company, a corporation, against John E. Turner, county treasurer of Cass county, Nebraska, and other officers of the county, and the officers of school district No. 1 of Cass county, Nebraska, praying that they be enjoined from collecting school taxes assessed against the bridge company for the year 1932 for the reason that the bridge company property in question was located in school district No. 2 and not in school district No. 1. District No. 2 intervened in said action and set up its claim that the property was located within its district. From a decree of the district court finding that the property was located in district No. 2, district No. 1 brings this appeal. As a matter of convenience, the Plattsmouth Bridge Com-

pany will be designated as the bridge company, and the two school districts will be designated as districts No. 1 and 2, respectively.

The record discloses that early in 1930 the bridge company completed the construction of a toll bridge over the Missouri river near Plattsmouth, Cass county, Nebraska. In 1931 the west half of the bridge was assessed in district No. 2, and in 1932 it was changed from district No. 2 to district No. 1 after the board of equalization had adjourned and without notice to the parties interested. The evidence is conclusive that the bridge abuts on the fractional north half of the northwest quarter of section 20, township 12 north, range 14 east of the sixth P. M., in Cass county, Nebraska. The question for determination is whether the fractional north half of the northwest quarter of section 20 is within the boundaries of district No. 2, as alleged by appellees, or whether it is within the boundaries of district No. 1, as claimed by the appellant.

The appellees contend that the reported case of *Chicago, B. & Q. R. Co. v. Cass County,* 51 Neb. 369, determines the issues raised by this appeal and that they are therefore *res judicata.* This contention is without merit. District No. 1, or any party in privity with it, was not a party to that suit. Neither were the issues identical. The reported opinion in that case clearly shows that all parties thereto assumed that fractional section 20 was within district No. 2 and the question determined was whether the railroad bridge was within the boundaries of fractional section 20. The decision of this court that the railroad bridge was not within fractional section 20, and not therefore within district No. 2, is in no way binding upon the appellant in the case at bar. The parties in that case were not the same and the issues altogether different. The doctrine of *res judicata* can under such circumstances have no application. *Andrews v. Commercial Casualty Ins. Co., ante,* p. 496.

The record discloses that the city of Plattsmouth was created a body corporate on March 14, 1855, by a special

act of the legislature of the territory of Nebraska, its boundaries being therein described as "all the territory within the geographical limits of the city of Plattsmouth, together with all additions that may be made thereto." Laws 1855, p. 366, sec. 1. On February 16, 1867, the territorial legislature passed an act authorizing "the common council of the city of Plattsmouth to raise money to erect a central or high school building, and for other purposes." This act also provided "that the mayor and common council of the city of Plattsmouth shall * * * be commissioners of the schoolhouse fund in and for said city * * * and shall possess all the rights, powers and authority, and be subject to the same restraints of township boards of education." Territorial Laws 1867, p. 38, sec. 1. By this special act, the territory within the geographical limits of the city of Plattsmouth, together with all additions that may be made thereto, is designated as a school district. It is argued that this act is in conflict with the provision of the Constitution of 1866 which provides: "The legislature shall pass no special act conferring corporate powers." Const. 1866, art. VIII, sec. 1. This can have no application for the reason that the Constitution commonly called the Constitution of 1866 did not go into effect until March 1, 1867. The Constitution of 1866 did provide, however, that "it shall be the duty of the legislature to pass suitable laws * * * to encourage schools and the means of instruction." Const. 1866, art. I, sec. 16.

On June 24, 1867, an act "for the revision of the school law" was passed which contained the following provision: "That each organized county shall be divided by the county superintendent into as many school districts as may from time to time be found necessary; Provided, That the superintendent shall have power to change or modify the lines or boundaries of any school district at any time." Laws 1867, p. 101, sec. 1. It is the contention of appellant that this section authorized the county superintendent to change the boundaries of district No. 1, which he later attempted to do. The same act, how-

ever, contained this provision: "Nothing in this act shall be construed, so as to interfere with, or abrogate any of the rights, privileges, and immunities, duties or liabilities conferred or prescribed, by special enactment, for any school district comprised within any incorporated city." Laws 1867, p. 110, sec. 60. The provisions just quoted from the school law of 1867 were continued in force and in substance reenacted in the act of February 18, 1873, entitled an act "to regulate the public schools of Plattsmouth City, and provide means for their support." Laws 1873, p. 73. This subsequent act at least indicates a legislative intent to preserve the rights of school districts organized by special enactment. It is argued that the Constitution of 1866 deprived the school district of Plattsmouth City of any rights that it may have had prior to the date that it became effective. The Constitution itself preserved existing rights by providing: "That no inconvenience may arise from the change of territorial government to a state government, it is declared that * * * all laws now in force shall remain in force until altered, amended, or repealed by the legislature: Provided, Wherever the word territory shall occur, it shall be construed to mean state, whenever it may be necessary, in order that such laws may conform to the state government." Const. 1866, art. XI, sec. 1.

The question therefore is whether the act of June 24, 1867, providing that the superintendent shall have power to change or modify the boundaries at any time can affect the school district of Plattsmouth City and whether the county superintendent had the power after the passage of that act to change the boundaries of the school district in Plattsmouth City. The only reasonable construction that can be placed on this legislation is that the act of June 24, 1867, providing that the county superintendent could change or modify the boundaries of any district at any time, and all subsequent general acts of like nature, could have no effect upon a district organized by special enactment as was the Plattsmouth school district.

The act of the legislature in making the territory within the city of Plattsmouth and its additions a school district was special in its nature. All of its rights and liabilities were reserved to it that were not expressly taken away. We can find no legislative act that specifically nullifies the act of the legislature in fixing the boundaries of Plattsmouth school district. The act of June 24, 1867, authorizing county superintendents to change or modify school district boundaries can have effect only when the special legislative enactment is without force. This court has held: "A particular intention expressed in a legislative act, if in conflict with a general intention expressed in a later enactment, should be given effect, leaving the later act to operate only outside of the scope of the former." *State v. Clarke*, 98 Neb. 566. Also, in the case of *Jackson v. Washington County*, 34 Neb. 680, it was held: "It is an established rule of construction that a subsequent statute treating of a subject in general terms and not expressly contradicting the provisions of a prior act, shall not be construed as intended to affect the more particular and positive provisions of a prior act, if any other reasonable construction can be adopted."

It might be argued that the subsequent statute, providing that the county superintendent shall have power to change or modify the boundaries of any school district at any time, is in direct conflict with the act of February 16, 1867, which provides that the city of Plattsmouth shall be a school district by itself. But, in view of the reservations made in the act itself preserving to it all the rights, privileges, immunities, duties or liabilities conferred by special enactment, it was clearly the intention of the legislature that effect should be given to both statutes. The subsequent action of the legislature in reenacting this provision in 1873 further supports the theory that it was intended that both acts should be given effect.

This being true, district No. 1 consists of the territory within the geographical limits of the city of Plattsmouth,

together with all additions that may be made thereto. The order of the county superintendent under date of April 20, 1869, stating that "school district No. one (1) embraces the city of Plattsmouth and its additions," correctly designates the boundaries of that district according to the record before us. The subsequent orders of the county superintendent, under the dates of May 18, 1870, December 15, 1870, and November 1, 1871, purporting to transfer fractional section 20, or any part thereof, from district No. 2 to district No. 1 are void and without effect. It necessarily follows that the fractional north half of the northwest quarter of section 20, hereinbefore fully described, and the toll bridge located thereon, are within the boundaries of district No. 2.

The contention is made by the appellant that, the land on which the bridge is located having been assessed in district No. 1 for a long period of time, and the taxes having been paid without objection, appellees are now estopped to deny that it is within the district. In the case at bar, the tax levied by district No. 1 is void for the reason that it is not within the district. Its situs for taxation purposes is by statute the same as the real estate on which it is located. Comp. St. 1929, sec. 77-1416. It being determined that the real estate is in district No. 2, it necessarily follows that the situs of the bridge thereon is also in district No. 2. A void tax is no tax. It can be enjoined or collaterally attacked. The fact that previous owners of the real estate, on which the bridge is located, labored under a mistake of fact as to which school district it was in and paid their taxes in the wrong district, no prejudice to the district being shown, cannot change the result. In the case of *Chicago, B. & Q. R. Co. v. Cass County,* 51 Neb. 369, it was held: "All that appears is that the tax agent so listed the property as being in school district No. 2; that he did this because of a mistake of fact as to the actual location of the bridge and that the mistake was innocently made; but it does not appear that the school district was in any manner

prejudiced by such listing or representation of the railroad company's tax agent, and we conclude, therefore, that the conduct of the railroad company in listing its property as being in school district No. 2 in the year 1895, and prior years, does not estop it from maintaining this action." The bridge company and its predecessors in interest are in the same position as the railroad company in the case cited, and, for the reasons set out in that decision, we hold that there is no estoppel in the case at bar.

The trial court arrived at a proper conclusion and the decree entered below is in all respects correct. The judgment of the trial court is therefore

AFFIRMED.