## Craven Estate.

Argued March 29, 1951. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and GUNTHER, JJ.

*W. Horace Hepburn, III*, with him *W. Horace Hepburn, Jr.*, for appellant.

*Charles G. Gartling*, with him *Joseph R. Young, Jr., Sidney A. Johnson, Jr.*, and *Butler, Beatty, Greer and Johnson*, for appellee.

OPINION BY RHODES, P. J., July 19, 1951:

At the audit of the account of the administrator c.t.a. of the estate of Morton R. Craven, deceased, Thomas E. James, the appellee, presented a claim for damages occasioned by reason of decedent's failure to perform a written contract for the sale of land to appellee. The claim was allowed by the Orphans' Court of Delaware

County in the amount of $2,340 with interest. Five hundred dollars represented return of the deposit made upon signing the agreement, and the balance of $1,840 constituted damages for loss of bargain. Appellant, who is the residuary legatee under decedent's will as well as a claimant, excepted to such adjudication, and upon dismissal of his exceptions he appealed from the final decree.

Decedent's failure to comply with the provisions of his contract with appellee resulted from his inability to do so by reason of being compelled to specifically perform an earlier contract under which he agreed to sell the same premises to another party. The question before us is whether decedent's conduct, under the facts, constituted bad faith.

By written contract dated October 29, 1945, Morton R. Craven, the decedent, through a straw man, contracted to convey certain real propery consisting of twenty-four lots in Delaware County to the Marshall Construction Company, Inc., for the sum of $6,575.20. On January 25, 1946, the Marshall Construction Company, Inc., notified the seller that it exercised one of the alternate options under the contract.

On March 30, 1946, Morton R. Craven contracted in writing to sell a portion of the premises to the St. John's Evangelical Lutheran Church of Folcroft for the sum of $3,500. On the same day he contracted in writing to sell the balance of the tract to the appellee, Thomas E. James, for the sum of $5,700, of which $500 was paid upon signing the agreement. This latter agreement provided: "In the event that the party of the first part [Craven] is unable to carry out the terms of this agreement by reason of any flaw or defect in the title, then the said hand money paid, is to be returned by the said party of the first part to the party of the second part [James] and this agreement is to become null and void."

On May 14, 1946, the Marshall Construction Company, Inc., had issued a summons in equity against Craven and his straw man, and on May 24, 1946, it filed its bill praying for specific performance. The suit was indexed in the judgment index in the office of the Prothonotary of Delaware County. St. John's Evangelical Lutheran Church of Folcroft was later joined as an additional defendant. On June 24, 1946, Craven and James agreed in a writing endorsed on the back of their agreement to extend the time for its performance for thirty days or until a settlement certificate was issued by the Delaware County Trust Company. On July 31, 1946, the same parties again agreed in a writing endorsed on the back of their agreement to extend the time for its performance for sixty days or until the above suit in equity brought by the Marshall Construction Company, Inc., was settled. The court below in its opinion said: "The subsequent act of extending time for performance of the agreement does not amount to acquiescence by claimant in decedent's 'double dealing.' The extension merely provided decedent with a further opportunity to perform, if possible."

A decree requiring specific performance of the contract between Craven and the Marshall Construction Company, Inc., was filed in the equity action in the Court of Common Pleas of Delaware County on April 25, 1947. Upon appeal the Supreme Court affirmed the decree. *Marshall Construction Company, Inc. v. Forsyth,* 359 Pa. 8, 57 A. 2d 902.

Subsequently, the appellee, Thomas E. James, through a business associate, purchased from the Marshall Construction Company, Inc., for the sum of $7,540 the same premises which Craven had agreed to sell to him for $5,700. The difference of $1,840 represents the damages for loss of bargain as found by the court below.

Morton R. Craven died on February 10, 1948. The administrator c.t.a. of his estate concedes that the estate is indebted to appellee in the sum of $500, the deposit money paid under the contract of March 30, 1946, but he denies liability for damages for loss of bargain.

In *Seidlek v. Bradley*, 293 Pa. 379, 142 A. 914, 68 A.L.R. 134, the opinion written by Mr. Justice KEPHART served to dispel the theretofore existing confusion with respect to the question of damages recoverable by the vendee where the vendor breaches a written contract for the sale of real estate as distinguished from a situation where the breached contract was parol. As to damages in the case of a breach of a written contract, it was said, page 382 of 293 Pa., page 915 of 142 A.: "The rule as to damages for breach of a written contract through failure to convey depends largely on the cause of the breach: Bitner v. Brough, 11 Pa. 127. The rule there stated was, that where a vendor, without fraud on his part, is incompetent to make out a title, the vendee is not entitled to damages for the loss of his bargain, but may recover the money paid, with interest and expenses, although the completion of the bargain might have proved profitable to him; but where the vendor is guilty of collusion, tort, artifice, fraud or does acts not in good faith to escape from a bad bargain, the vendee is entitled not only to a return of money paid and expenses, but damages arising from the loss of his bargain or the money he might have derived from its completion. This is the bad faith rule."

Appellant contends, however, that in *Seidlek v. Bradley*, supra, and in all other Pennsylvania cases where the bad-faith rule has been applied, the acts constituting bad faith were performed by the vendor after the contract had been entered into and with the design of avoiding compliance with its terms. In the present

case, he argues, decedent would have willingly complied with his contract with appellee, as well as the contract with the church, had he been able to do so because it would have profited him more than did compliance with the earlier contract entered into with Marshall Construction Company, Inc., which was ordered by decree of specific performance. It was this judicial decree, he asserts, which prevented the decedent from carrying out his contract with appellee, and therefore bad faith may not be charged to him.

While it is true that a contractual duty may be discharged where performance is subsequently prevented or prohibited by a judicial order made with due authority, this is so only in the absence of circumstances showing a contrary intention or contributing fault on the part of the person subject to the duty. See Restatement, Contracts, § 458. Consequently, appellant may not invoke the issuance of the decree requiring specific performance of the prior contract as an excuse for decedent's failure to comply with the contract between him and the appellee since contributing fault upon the part of decedent is clearly present. Decedent must of necessity have known of the existing contract with Marshall Construction Company, Inc., at the time he entered into the second contract with appellee. By virtue of the first contract he had conveyed the equitable title to the premises in question. At the time of entering into the second, whereunder he contracted to convey a good and marketable title to appellee, he was seized of the bare legal title in and to the premises. This certainly constitutes contributing fault; and, moreover, we are of the opinion that it constitutes legal bad faith. In 55 Am. Jur., Vendor and Purchaser, § 563, p. 956, it is stated: "The good-faith rule, limiting the liability of a good-faith vendor, unable to carry out the contract, to the amount the vendee has paid upon the purchase price and interest thereon, and denying to

the vendee recovery for the loss of the benefit of his bargain, seems generally to be regarded as being inapplicable to cases where the vendor knew of a defect in his title when he entered into the contract. According to the weight of authority, if a vendor at the time of entering into a contract to sell land knows that he is unable to perform the contract, because he has no title to the land, he is liable, upon his breach, to pay the difference between the contract price and the actual value of the land, and his belief that he could thereafter, before the time fixed for performance, acquire title, or otherwise render himself capable of performance, does not prevent the application of this rule of damage." The same rule is set forth in 48 A.L.R. 12, 45, in a discussion of the question of damages recoverable by a vendee, and it is there noted that some of the cases cited in support of such rule are from jurisdictions which in general follow the good-faith rule.

We consider a situation where the vendor knew that he did not have equitable title at the time of entering into the contract to convey as being in the same category as if he had no title at all. For somewhat similar situations, see *Arentsen v. Moreland*, 122 Wis. 167, 99 N.W. 790, 65 L.R.A. 973; *Rosenberg v. Derbes*, 165 La. 407, 115 So. 637.

In *Seidlek v. Bradley*, supra, 293 Pa. 379, 383, 142 A. 914, 916, it is stated that "Any unjustified failure to perform a written contract, whether this failure be fraudulent or not, entitles the vendee to damages for the loss of his bargain." No valid reason suggests itself to us for differentiating between a case where the failure to perform is due to an inability existing at the time of entering into the contract and known to the vendor and a case where a vendor willfully refuses to convey or disables himself from conveying after making the contract. In either situation there is an absence of good faith.

By reason of vendor's death and the resulting disqualification of appellee as a witness to the transaction occurring in vendor's lifetime, there is no evidence in the record as to whether or not appellee had knowledge of the prior contract at the time of his agreement with decedent. Appellant contends that appellee, the vendee, has therefore failed to meet his burden of proving bad faith upon the part of the decedent, the vendor. This is not the fact. Decedent had contracted to sell appellee the land in question on March 30, 1946. Previously, on October 29, 1945, decedent, through his straw man, had by agreement of sale sold this land to another, and on March 30, 1946, subject to that agreement, took conveyance from his straw man of the land in controversy. Decedent is chargeable with knowledge of the execution of his prior contract and that he did not possess the power to perform his contract with appellee. It was a matter of defense to show that appellee had knowledge of this prior contract, and the burden of proof was on appellant. The provision in the contract with appellee to the effect that, if decedent was unable to comply with the agreement by reason of any flaw or defect in the title, the hand money was to be returned and the agreement would become null and void is not available to appellant as a defense against recovery of damages by appellee for loss of his bargain. This covenant was primarily designed to protect the vendee, and it was not intended to save the vendor harmless from liability for failure to perform the written contract to convey land in which he knowingly lacked the equitable title. See *Smith v. Krause*, 64 Pa. D. & C. 451.

The decree of the court below is affirmed; costs to be paid by appellant.