VAYLE VONNE GERKINS KUHL, APPELLEE, V. SCHOOL
    DISTRICT NO. 76 OF WAYNE COUNTY, NEBRASKA,
                    APPELLANT.
                    No. 33099.
RALPH M. FLUENT, APPELLEE, V. SCHOOL DISTRICT NO. 76
    OF WAYNE COUNTY, NEBRASKA, APPELLANT.
                    No. 33100.
ARDITH MOFFETT, APPELLEE, V. SCHOOL DISTRICT NO. 76 OF
    WAYNE COUNTY, NEBRASKA, APPELLANT.
                    No. 33101.
                  51 N. W. 2d 746

              Filed February 15, 1952.

*Budd B. Bornhoft,* for appellant.

*Mark J. Ryan* and *Joseph G. Rogers,* for appellees.

Heard before SIMMONS, C. J., MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CHAPPELL, J.

Plaintiffs filed three separate actions at law to recover upon their respective contracts to teach during the 1948-1949 school year, which contracts were allegedly executed and subsequently breached by the officers of defendant district, who wrongfully failed, neglected, and refused to open or conduct the school at any time during such year. Defense was that the contracts were invalid for failure to comply with certain alleged mandatory requirements contained in statutes then controlling, and that certain injunctive orders in full force and effect from August 30, 1948, until January 27, 1950, prevented defendant from opening and conducting a school during all of the period covered by the alleged contracts, and thus by operation of law excused performance thereof. In their amendments to replies, plaintiffs, among other things, also affirmatively alleged that they were "prevented from fulfilling" such contracts "because of the wrongful injunctive orders, wrongfully and illegally issued * * * copies of which * * * are attached to defendant's answer * * *."

A jury was waived, and the issues were tried to the court, after which it was found that the contracts were all valid, that the performance thereof was not excused by operation of law, and the court rendered separate judgments in favor of each plaintiff respectively, taxing costs to defendant. Motions for new trial were overruled, and defendant appealed each case separately, assigning that the judgments were not sustained by the evidence but contrary thereto and contrary to law. The three cases were consolidated by stipulation in this court for purposes of briefing, argument, and decision.

Thus in one opinion we sustain the assignments, concluding that the judgments were respectively contrary to law and clearly wrong.

The pertinent facts as disclosed by the record are either stipulated or undenied. They are as follows: In April 1948 the schoolhouse belonging to defendant district was destroyed by fire. Two buildings were then leased by unanimous action of the board in which school was held for the rest of that school year. No action was taken at the annual school meeting on June 9, 1948, with reference to leasing school buildings for the next school year, but thereafter, on July 20, 1948, the electors defeated a proposal to construct a new schoolhouse. Some disagreement arose between the board members regarding school facilities for the 1948-1949 school year, whereupon the moderator and director entered into an oral lease for the same buildings as theretofore leased, in which school was to open on September 6, 1948, for the 1948-1949 school year.

On August 12, 1948, the same moderator and director entered into the alleged contract with plaintiff Kuhl to teach elementary grades. She then held a third grade elementary certificate valid for that purpose in article 3 schools, as provided by section 79-1310, R. S. 1943. However, such certificate was not registered in the office of the county superintendent until September 9, 1948, after the alleged contract was executed, after school was supposed to open on September 6, and after the injunctive orders which prevented performance were in full force and effect.

Likewise, on August 13, 1948, such officers entered into the alleged contract with plaintiff Fluent to serve as school superintendent. He then held a certificate valid for that purpose which, however, was not registered in the office of the county superintendent until August 18, 1948, after the alleged contract was executed.

Likewise, on August 25, 1948, they entered into the alleged contract with plaintiff Moffett to teach elemen-

tary grades. She had previously taught in Dixon County schools, but her third grade elementary certificate, valid for teaching elementary grades in article 3 schools, had expired in June 1948 and at time of executing the alleged contract she had no certificate whatever. The blank space in such printed contract into which should have been written the type of certificate then held by her was for that reason left blank and still so appears. However, she attended summer school at Wayne State Teachers College and had earned credits sufficient to entitle her to renewal of her certificate. On August 28, 1948, she applied for such renewal. After some delay occasioned by the Department of Public Instruction such a certificate, antedated September 8, 1948, was received by her about September 22, 1948, and was registered in the office of the county superintendent on October 6, 1948, all of which occurred after the alleged contract was executed, after the time set for opening school, and after the injunctive orders preventing the same were in full force and effect.

Be that as it may, no school whatever was opened or held in defendant district during the 1948-1949 school year and its children attended neighboring districts. As affirmatively pleaded by both plaintiffs and defendant and as stipulated by them, the reason therefor and the reason for failure to perform the alleged contracts as well was "That defendant's school was not operated during the school year of 1948-1949 by reason of the injunctive orders" entered by courts of competent jurisdiction, which continuously enjoined the opening or conducting of any school from August 30, 1948, until final decision by this court in Griggs v. School District, 152 Neb. 282, 40 N. W. 2d 859, on January 27, 1950, which was more than six months after the teaching dates under the alleged contracts had expired.

In that connection, on August 30, 1948, one Ira O. Griggs, a taxpayer and resident elector of the district, filed an action in the district court in his own right

and on behalf of all persons similarly situated, against the district and its officers, to enjoin the expenditure of school district funds, the entering into of agreements in regard to operation of a school, changing the site of the school, and leasing a building for school purposes unless and until approved by the legal voters of the district.

On that date, in the absence of the district judges from Wayne County, the county judge issued a temporary restraining order, conditioned upon the execution of a $250 bond, restraining defendants and each of them from in any manner conducting a school, entering into any teacher contracts, and expending any of the district's money upon any building not belonging to the district. The matter of hearing upon the application for a temporary injunction was duly set and noticed for September 9, 1948, at 10 a. m. In the meantime, a director notified plaintiffs of the proceedings, and that school would not be opened on September 6, 1948, as planned.

Thereafter, on September 9, 1948, after hearing whereat evidence was adduced, and over objections by defendants, the district court granted a temporary injunction conditioned upon the giving of a $1,000 bond, which injunction enjoined defendants from leasing or carrying out the terms of any lease for school buildings or changing the school site until and unless approved by electors of the district. They were also enjoined in any event from maintaining a high school.

Thereafter, on September 24, 1948, the voters of the district unanimously voted against a proposal to lease a described hall for school purposes, whereupon defendant officers answered, denying generally any right to injunctive relief, alleging that the district for many years prior to 1947-1948, had lawfully maintained an eighth grade and a four-year high school and that in attempting to hire teachers and lease buildings for school purposes they were merely carrying out the duties im-

posed by statute upon officers of such a district. They prayed for dissolution of the temporary injunction and dismissal of the petition at plaintiffs' costs.

On November 24, 1948, a trial of the issues was had whereat evidence was adduced and the cause was submitted to the court. Briefs were subsequently filed by counsel for the parties and on April 19, 1949, a memorandum opinion was filed by the trial court and a decree was rendered, finding and adjudging the issues generally in favor of plaintiffs and against defendants, with costs taxed to defendant moderator and director. It concluded substantially that such officers had, without legal authority, attempted to lease buildings, change the schoolhouse site, spend school funds, and conduct a high school in the district, and that the temporary injunction theretofore granted should be made permanent in accord with the prayer of plaintiffs' petition. It then so decreed, permanently enjoining defendants from leasing or attempting to lease a school building for school purposes, changing or attempting to change a school site, and from making any expenditure of district funds without and until so authorized by vote of electors of the district, and enjoined defendants from maintaining a high school in any event.

Therefrom defendants timely appealed to this court whereat in the opinion, Griggs v. School District, *supra,* it was concluded that defendant district was and had been for many years beyond the limitations of section 79-308, R. S. 1943, an article 6 and not an article 3 school, that its officers were governed by the statutes and regulations with reference thereto, and that until the legal voters in the district proceeded by law to effect a change in its organization such powers so remained. Consequently it was concluded that the officers could conduct a grade and high school, employ teachers, enter into contracts necessary to performance of their duties authorized by law, with implied power in an emergency to lease buildings suitable for school purposes, that the

leasing of a building for use as a temporary school was not a change of the school site within the purview of the statute, and that such school board was authorized to draw and deliver warrants in payment of expenses necessary to conduct and maintain the school.

In the light thereof we concluded that the trial court erred in granting plaintiffs any of the relief sought. Thus we reversed the judgment and dismissed the cause. The mandate therein, appearing in the record now before us, dated February 17, 1950, so ordered, taxed costs to plaintiffs as appellees, and awarded execution therefor.

Defendant argued in the present appeals that, in the light of the provisions of then applicable statutes, the alleged contracts involved were invalid.

In that connection, section 79-1310, R. S. 1943, provided in part: "The Nebraska Third Grade Elementary School Certificate shall be valid in kindergarten to eighth grade inclusive for a period of three years in schools organized under sections 79-301 to 79-311." Such schools are generally designated as article 3 schools.

Section 79-1333, R. S. 1943, provided: "No person shall be employed to teach in any public, private, denominational or parochial school in this state who does not hold a valid Nebraska certificate legalizing him to teach the grade or subjects to which elected."

Section 79-1338, R. S. 1943, provided: "Each holder of a teacher's certificate shall, *before contracting to teach, register the same* in the office of the county superintendent of the county in which he is contracting to teach. The superintendent shall endorse upon the certificate that it has been registered and the date thereof. Such registration shall be without fee, and *no certificate to teach nor contract for a school shall be valid until the certificate is so registered.* The school board at the time of contracting with a teacher shall transmit to the county superintendent the name of the teacher to be employed, together with the position to which elected.

The county superintendent at the time of receiving notice shall certify to the school board the name of any teacher who has not met with the requirements of the law as herein provided, and *such contract and certificate shall be invalid* and the teacher *shall* be immediately dismissed by the board." (Italics supplied.)

Section 79-1339, R. S. 1943, provided: "The school board shall be personally liable for all public moneys paid to teachers who are not qualified under the provisions of sections 79-1309 to 79-1339. A teacher violating the provisions of said sections shall not recover any moneys for services while teaching *during the time that such contract and certificate are invalid."* (Italics supplied.)

Plaintiffs' contention that validity of the contracts here involved was res judicata by reason of the opinion in Griggs v. School District, *supra,* has no merit. The applicable rule is that a judgment is not res judicata as to any fact at issue in subsequent actions where neither issues nor parties are the same. Plattsmouth Bridge Co. v. Turner, 128 Neb. 738, 260 N. W. 562; Gulizia v. Royal Indemnity Co., 139 Neb. 832, 299 N. W. 220.

It will be noted that plaintiffs Kuhl and Moffett not only did not register any certificate in the office of the county superintendent before contracting to teach, but also in fact plaintiff Moffett had no certificate whatever when the contract was executed, and neither of such plaintiffs ever held a certificate authorizing her to teach in an article 6 school such as defendant had been for almost a quarter of a century. See Griggs v. School District, *supra.* Whether or not the county superintendent and others thought that defendant was an article 3 school district is of no consequence. Therefore, under the express provisions of the foregoing statutes such plaintiffs were not qualified to enter into any contract with defendant to teach, nor was defendant through its board authorized to enter into any con-

tract with such plaintiffs for that purpose and, as provided by statute, their contracts were invalid.

Their situation is identical in principle with that of the plaintiff in Zevin v. School District, 144 Neb. 100, 12 N. W. 2d 634, wherein a recovery was denied upon the ground that the contract was void. In doing so, we quoted with approval from 24 R. C. L., § 73, p. 616, where it is said: " 'There are statutes in many jurisdictions providing that persons teaching in the public schools must be holders of teachers' certificates and the question has frequently arisen as to the effect of a contract made by a board with a person not so qualified. Such provisions may be neither waived nor dispensed with and it has been held broadly that the possession of the certificate is a necessary prerequisite to appointment or employment and that any contract made with a teacher not having such certificate is void so as not even to be susceptible of ratification, and that a teacher who lacks the required certificate or license cannot recover on his contract for services rendered thereunder, because the right of a public officer to the compensation of his office is incident to and dependent upon his right and title to the office.' " That rule would prevent plaintiffs Kuhl and Moffett from recovering anything upon their alleged contracts.

On the other hand, plaintiff Fluent did hold a Nebraska Provisional Administrative and Supervisory Certificate at the time the alleged contract was executed on August 13, 1948. It was not registered at that time but that was done on August 18, 1948, before the effective date of the injunctions and before school was supposed to open. However, he never did teach in defendant school, but upon being prevented from doing so by the injunctive orders, he obtained employment elsewhere at a lesser salary and here claims the difference. His case is factually distinguishable from that of plaintiffs Kuhl and Moffett here and the plaintiff in Zevin v. School District, *supra,* but whether or not his contract

was invalid for failure to register the same "before contracting to teach" we are not required to decide. As hereinafter observed, we may assume for purpose of argument only that it was valid and arrive at the same result.

In that connection, there is good reason why none of the plaintiffs could recover in any event. Each of the contracts provided that they could be terminated "by the operation of law" without "penalty." We conclude that they were so terminated by the injunctive orders heretofore discussed. With regard to that conclusion, in Restatement, Contracts, § 458, p. 852, entitled "Supervening Prohibition or Prevention by Law" it is said: "A contractual duty or a duty to make compensation is discharged, in the absence of circumstances showing either a contrary intention or contributing fault on the part of the person subject to the duty, where performance is subsequently prevented or prohibited * * * (b) by a judicial, executive or administrative order made with due authority by a judge or other officer of the United States, or of any one of the United States."

Illustration 3 at p. 854 following such section is identical in all material respects with the case at bar. To paraphrase it would serve no purpose. It is sufficient for us to say that in the absence of circumstances showing a contrary intention or contributing fault by defendant, the rule is controlling here.

As stated in 6 Corbin on Contracts, § 1346, p. 348, citing cases: "Performance of a contract is sometimes prevented by a judicial order or decree forbidding such performance or by a judicial seizure of subject matter or of the means necessary to performance. Some cases have held that this kind of prevention is not a good excuse for non-performance. These holdings can be justified if the judicial action was brought about by reason of the defendant's default in performance of some other legal duty, or if the defendant could have prevented such judicial action by diligent effort. The de-

fendant owed a duty to the plaintiff to perform his contract; and this includes the duty of taking all steps that are necessary to such performance, even including the prevention of interference by third parties so far as is possible by a reasonable degree of effort.

"Prevention of performance by judicial order or decree, at the instigation of third parties, may properly be held to be a valid defense in an action for breach of contract, if it was not caused by the defendant's own negligence or breach of duty to others and if no means of avoiding such interference with performance are reasonably available." The case at bar comes squarely within such statement. See, also, 6 Williston on Contracts (Rev. Ed.), § 1939, p. 5432; 13 C. J., Contracts, § 720, p. 646; 17 C. J. S., Contracts, § 467, p. 964.

As simply stated in Bishop on Contracts (2d Ed.), § 607, p. 256: "Judicial process,—interrupting the doing of the thing, and rendering it impossible, will excuse performance."

In 12 Am. Jur., Contracts, § 379, p. 956, note 1, it is said: "The doctrine that where performance of a contract is prevented by the action of a court of competent jurisdiction nonperformance is excused has been expressly approved as falling within the rule that where a party is prevented from performance of a contract by an event of such a character that it could not reasonably be supposed to have been within the contemplation of the contracting parties when the contract was made, nonperformance is excused. Annotation: L. R. A. 1916F, 75."

In School District v. Howard, 5 Neb. Unoff. 340, 98 N. W. 666, the school was closed by order of the board of health. A teacher sought in that action to recover wages allegedly due under his contract during such period. Defense by the district was that it was prevented from carrying out the contract because it was made impossible by law. In that opinion this court reversed the judgment for plaintiff, saying: "But the

action of the district in closing the school was not voluntary. It was the act of the law which the district and all others were compelled to obey." See, also, 56 C. J., Schools and School Districts, § 373, p. 420, citing the aforesaid Nebraska case and Gregg School Township v. Hinshaw, 76 Ind. App. 503, 132 N. E. 586, 17 A. L. R. 1222, a case almost identical therewith.

In Burkhardt v. Georgia School Township, 9 S. D. 315, 69 N. W. 16, it was held: "An injunction restraining a person from performing a contract with a school board for the removal of a school house will excuse such person from performing his contract, in the absence of a showing that the injunction was dissolved within such time as made it necessary for him to resume work."

In Olyphant Borough School District v. American Surety Co., 322 Pa. 22, 184 A. 758, it is said: "It is a fundamental principle that where the performance of a contract is prevented, without fault on the part of the promisor, by a proper judicial order, the obligation to perform is discharged: Restatement, Contracts, section 458; see Monaca Boro. v. M. & A. St. Ry. Co., 247 Pa. 242; 3 Williston, Contracts, section 1939."

It has long been the rule in this jurisdiction that: "A party is not punishable for contempt of court for disregarding a void order of injunction; but, when an injunction is legally granted in a case where the court has jurisdiction of the subject matter and of the parties, it must be respected until it is set aside by the court allowing it, or is reversed in the appellate court by some appropriate mode of direct review." Miles v. State, 74 Neb. 684, 105 N. W. 301. See, also, 28 Am. Jur., Injunctions, § 330, p. 503. Concededly, the injunctive orders here involved were not void and defendant district and its officers were required to obey them until the granting thereof was reversed by this court upon appeal.

In the case at bar the injunctive orders prevented defendant district from opening or holding school dur-

ing all and more of the period involved in the contracts. Thus the thing contracted to be done was thereby made impossible of performance by law. There is no obligation to do impossible things.

We have been cited no authority by plaintiffs and have found none holding, under circumstances comparable with those at bar, that defendant was required to perform the contracts involved.

For the reasons heretofore stated we conclude that the respective judgments should be and hereby are each reversed and the actions are each dismissed. Costs in each case are taxed to the respective plaintiffs therein.

REVERSED AND DISMISSED.