Jones, J.
Corporate sellers were initially prevented from closing title under a real estate sales contract by an injunction obtained at the instance of dissident stockholders. We hold, in what appears to be a case of first impression, that the corporate sellers are not thereby excused from payment of real estate brokerage commissions due on such closing where the dissident stockholders shortly thereafter obtained management control of the corporate sellers and then failed to take diligent steps to dissolve the injunction and beyond that procured formal corporate action repudiating the sales contract.
Some background information will be useful.[1] Dollar Land Holdings Limited (Dollar England), a publicly held English corporation, owned approximately 90% of the outstanding shares of Dollar Land Corporation, Limited (Dollar Canada). Dollar Canada, in turn, owned all of the shares of County Dollar Corporation (County Dollar), which, in turn again, owned all of the shares of Dollar Land Corporation Limited (US) (Dollar US).
Pursuant to a decision of the then management of Dollar England to liquidate the corporate assets of County Dollar and Dollar US, these latter two corporations on September 13, 1968 entered into a contract of sale (Sales Agreement) with Brook Realty Co., Inc. (Brook), by the terms of which County Dollar agreed to sell and convey its real estate holding, Cross County Shopping Center in Yonkers, and Dollar US agreed to sell and convey its real estate holdings, Parkdale Shopping *493 Center in Corpus Christi, Texas, and Citizens Bank Building in Orlando, Florida. Shareholder consent was obtained from Dollar Canada as sole shareholder of County Dollar to the sale by the latter of its Yonkers property, and from County Dollar as sole shareholder of Dollar US to the latter’s sale of the Texas and Florida properties. Notably the validity of the Sales Agreement has been upheld in another action (Westchester action) to which the present parties were also party (Cross Props, v Brook Realty Co., 37 AD2d 193, aifd 31 NY2d 938, mot. for reargument den 32 NY2d 833).
The Sales Agreement called for title closing on October 4, 1968. On October 1, however, a group of dissident shareholders of Dollar England, the ultimate parent of all the Dollar corporations, obtained a temporary restraining order in the Westchester action enjoining closing of title.. It was later determined in the Westchester action that Brook, the purchaser, had been ready, willing and able to close title on October 4 as contemplated in the Sales Agreement and that title would have closed had it not been for the court order. On October 10 the temporary restraining order was followed by a preliminary injunction.
On October 23 at a general meeting of the shareholders of Dollar England the dissident shareholder group obtained management control of the Dollar corporations. The reconstituted boards of directors of Dollar Canada, County Dollar and Dollar US then promptly adopted resolutions rescinding all prior authorizations for execution of the Sales Agreement. Further the Westchester action was adopted by the new management as the procedural means by which the selling corporations could challenge the legality of the Sales Agreement, on the grounds, inter alia, that, under section 909 of the New York Business Corporation Law requiring shareholder approval of a sale of all or substantially all of the assets of a corporation, the approval of the shareholders of the ultimate parent corporation, Dollar England here, was required. At a trial session in the Westchester action held on October 30, 1968 counsel for the new management moved to vacate the preliminary injunction—on the ground that there was no longer any need for the injunction. No application was made, however, to dissolve the injunction for the purpose of permitting performance by the sellers of their obligations under the Sales Agreement or to free the sellers to convey title under the Sales Agreement. It does not appear that any further *494 effort was made by the new management to dissolve the injunction. On December 9, 1969, over a year later the injunction was vacated by the court incident to its determination upholding the validity of the Sales Agreement.
After the efforts to set aside the Sales Agreement had failed the corporate sellers then made a belated tender of purported performance. In substance in the ensuing correspondence, Brook, the purchaser, rejected this tender offer, without abandonment, however, of its asserted right to specific performance. Brook’s position in this regard was subsequently upheld on the appeal in the Westchester action (31 NY2d 938).[2]
In the action now before us to recover broker’s commissions with respect to the frustrated sale, the parties agree that normally closing of title would have been a valid condition precedent to the collection of commissions under the particular brokerage agreement between these parties. Plaintiff broker moved for summary judgment, however, on the ground that in the circumstances of this case the defendant selling corporations could not take shelter in the fact that title had not closed since they were themselves responsible for failure of title closing. The motion was denied at Special Term. The Appellate Division reversed and granted summary judgment for plaintiff. We now affirm.
We first note that, in the procedural posture in which this case reaches us, there is no issue of credibility and the evidentiary facts are undisputed. The affidavits on the motion for summary judgment anticipate the availability of no additional extrinsic evidence and identify no factual inferences to be drawn from extrinsic evidence. The only issue tendered is one of law—whether the failure of these selling corporations in this factual setting to perform their contractual obligations under the Sales Agreement and to close title thereunder constitutes a legal defense to this action for brokerage commissions. There is no occasion for fact-finding by a jury and the issue is to be determined by the court as a matter of law; *495 summary judgment is therefore appropriate (Matter of Surrey Strathmore Corp. v Dollar Sav. Bank of N. Y., 36 NY2d 173; Hartford Acc. & Ind. Co. v Wesolowski, 33 NY2d 169, 172; Mallad Constr. Corp. v County Fed. Sav. & Loan Assn., 32 NY2d 285, 290-291).
It has been held that an outstanding court order preventing performance of a contract excuses performance by the party enjoined, provided the latter did not contribute or consent to the injunction (e.g., Peckham v Industrial Securities Co., 31 Del 200 [order enjoining corporation from fulfilling its contractual obligations granted on application of the corporate shareholders]; cf. General Aniline & Film Corp. v Bayer Co., 188 Misc 929, affd 281 App Div 688, affd 305 NY 479; People v Globe Mut. Life Ins. Co., 91 NY 174; see: Restatement, Contracts, § 458; 6 Williston, Contracts [rev ed], § 1939). This principle of law might have been applicable here with respect to the temporary restraining order issued on October 1, 1968 and the preliminary injunction of October 10, 1968, had there been no further developments. It might have been said as to each order that at the time of its issuance the selling corporations had neither contributed nor consented to it.
The legal situation changed radically and critically, however, when on October 23 management control of the Dollar corporations passed into the hands of the dissident shareholder group. From that time, only 19 days after the date scheduled for closing title in a contract as to which time was not made of the essence, the selling corporations must be deemed to have lost the insulating protection of the preliminary injunction. Formal corporate actions were promptly taken by the selling corporations at the instance of the new management to repudiate the Sales Agreement. It is true that the new management made a pro forma application in the Westchester action to vacate the injunction, but on the ground of mootness—that the injunction was no longer necessary to prevent the selling corporations from conveying the properties since those corporations had now themselves determined not to perform the Sales Agreement. No application was made to vacate the injunction so that title might be closed as agreed. Quite the contrary; the selling corporations were then taking the position that the Sales Agreement was invalid. Nor were efforts made thereafter to vacate the preliminary injunction or to close the title. Tender of performance by the selling corporations came only a year later when in the Westchester *496 action, the efforts of the selling corporations to escape their obligations under the Sales Agreement had come to naught.
We hold that while in proper circumstances the issuance of a restraining order or an injunction on the application of dissenting shareholders may provide legal excuse to a corporate seller for failure to close title, such excuse evaporates when thereafter and while performance is still possible the dissenters obtain control of the selling corporation and fail to make diligent effort to dissolve the outstanding injunction. At that point the failure of the selling corporation to perform its contract of obligations can no longer be ascribed to outside judicial interference but must rather be attributed to the refusal of the corporation on its own (now under the management control of the dissenters) to do so. In legal effect the formal action taken by the selling corporations at the instance of their new corporate managers to repudiate the Sales Agreement must be deemed to constitute ratification by the two selling corporations of the earlier action of the dissident group in obtaining the temporary restraining order and thereafter the preliminary injunction. By adoption the successful efforts of the dissenting shareholders in the Westchester action to restrain the sale became the action of the corporate sellers.
Nor does the fact that over a year after the scheduled closing date the corporate sellers, having failed in their bid to upset the Sales Agreement, belatedly tendered performance, constitute any defense to this action for brokerage commissions. The determinations made in the Westchester action that the sellers were liable to the purchaser for nonperformance of their contractual obligations under the Sales Agreement, and that such liability was unaffected by the belated tender of performance are here binding on the parties in this action.
Accordingly, the order of the Appellate Division should be affirmed.
Chief Judge Breitel and Judges Jasen, Gabrielli, Wachtler, Fuchsberg and Cooke concur.
Order affirmed, with costs.

. See, also, Cross Props. v Brook Realty Co. (37 AD2d 193).

. During the course of the Westchester action pursuant to stipulation between counsel for the new management group (the former dissidents) and counsel for respondent herein (the real estate brokerage firm) that action was voluntarily discontinued against the broker, with agreement, however, that "any final judgment” in the Westchester action and "any determination of fact upon which such final judgment rests shall have the same effect of res judicata and/or collateral estoppel, to the extent of applicable law * * * as if the [broker] were still a party to this action at the time of such final judgment.”