421 A.2d 226

**Gregory A. KASEMER and Patrick G. Kasemer, a Co–Partnership d/b/a Fountain House Park and Andrew G. Kasemer and Dorothy M. Kasemer**

v.

**NATIONAL FUEL GAS DISTRIBUTION CORPORATION, Appellant.**

Superior Court of Pennsylvania.

Argued April 11, 1979.

Filed July 3, 1980.

Norman H. Stark, Erie, for appellant.

Paul D. Shafer, Jr., Meadville, submitted a brief on behalf of appellees.

Before VAN der VOORT, SPAETH and WATKINS, JJ.

VAN der VOORT, Judge:

This is a claim in assumpsit by operators of a mobile home park against a gas company to recover damages alleged to result from the gas company's refusal to supply gas in breach of an alleged contract of defendant to supply gas service to plaintiffs for upwards of 110 mobile homes.

Plaintiffs began the development of the park in 1972, intending eventually to construct 100 or more sites for rental to operators of mobile homes. By the end of 1974 they had readied for occupancy approximately 11 sites of which 5 were occupied between September, 1974 and April 1, 1975.

Defendant (sometimes referred to hereafter as NFG) supplied gas to plaintiffs' tenants until April 1, 1975, but refused to supply gas to additional tenants after that date. The basis of NFG's refusal was an order dated February 1, 1972 of the Pennsylvania Public Utility Commission, forbidding the gas company to take on additional customers beyond its peak capacity. NFG determined that the PUC Order of February 1972 became applicable to it, effective April 1, 1975, because of curtailments of gas supply by its suppliers in December of 1974. See *Leveto v. National Fuel Gas Distribution Corporation v. The Pennsylvania Public Utility Commission*, 243 Pa.Super. 510, 366 A.2d 270 (1976).

Plaintiffs brought an action in equity against the NFG seeking a mandatory injunction to force NFG to supply gas service to plaintiffs. On May 27, 1975, the Court of Common Pleas ordered defendant to provide gas service to plaintiffs up to a maximum of thirty units. Defendant apparently complied with this order of May 27, 1975 until July 23, 1975 when the P.U.C. issued its order directing

defendant not to make further sales of gas, other than to customers already being served, and defendant then refused to supply gas to additional tenants of plaintiffs.

On August 12, 1975 the Common Pleas Court held NFG in contempt of the court's order of May 27, 1975. NFG purged itself of contempt by renewing the supply of gas for plaintiffs, but appealed the contempt order to the Superior Court without asking for a supersedeas. On September 25, 1975 the PUC petitioned to intervene in the appeal to the Superior Court and asked for a supersedeas. The supersedeas was granted on October 6, 1975 and apparently NFG discontinued the supply of gas until November 22, 1976, on which date the Superior Court affirmed the Common Pleas contempt order of August 12, 1975. See *Leveto v. NFG*, supra.

As of November 22, 1976 NFG resumed the supply of gas for plaintiffs.

In August 1976, plaintiffs filed this present action in assumpsit against NFG for breach of an alleged contract to supply gas, claiming damages originally for loss of value of their real estate,[1] plus extra expenditures necessitated by defendant's refusal to supply gas, plus (by an amended complaint) "loss of income over the past 1½ years" (Paragraph 12a of the Complaint).

Defendant's answer denied the contract and any breach of contract, and any liability for damages.

The case went to trial and a jury returned a verdict against defendant for $45,000.00.

Defendant's motions for judgment N.O.V. and for a new trial were refused, and defendant has filed this present appeal.

■ Defendant–appellant has raised three issues in this present appeal. The issue which we will first consider is this:

"The Appellees are not entitled to damages for an alleged breach of contract with NFG during the period of time

1. It appears that the claim for loss of value of the real estate was eliminated by court order before trial.

NFG was bound by an order of this Court not to perform its obligations under the contract."

The printed record appears to establish that NFG failed, or refused to supply gas to plaintiffs during these periods:

April 1, 1975 to May 27, 1975, or 57 days

(because NFG understood it was so required under the PUC's order);

July 23, 1975 to August 12, 1975, or 20 days

(in response to an order of the PUC);

October 6, 1975 to November 22, 1976, or 413 days.

This last period of non–delivery of gas was pursuant to an order of the Superior Court on the PUC's petition to intervene. The order reads (Record 126a):

## ORDER

AND NOW, October 6th, 1975 upon consideration of the petition of the Pennsylvania Public Utility Commission for leave to intervene, said petition is hereby granted and petitioner is granted leave to intervene as a party appellant. Said petitioner's request for supersedeas in the above captioned matters is also granted and National Fuel Gas Distribution Corporation is ordered to cease all further attachments of New residential service as required by orders of the Crawford County Court of Common Pleas on May 27, 1975, and June 6, 1975 at Nos. 2 and 4, May Term, 1975, in Equity, pending final outcome of the instant appeals. This case is advanced to the December 1st session in Philadelphia. Per Curiam, Van der Voort, J. (Emphasis supplied).

NFG argues that it is excused from liability to plaintiffs for any failure to supply gas in the period from October 6, 1975 to November 22, 1976, under Sec. 458 of *The Restatement of the Law of Contracts*, which has been adopted by our Supreme Court in *Olyphant Borough School District v. American Surety Co. of New York*, 322 Pa. 22, 184 A.2d 758 (1936), and which reads in pertinent part as follows:

A contractual duty or a duty to make compensation is discharged, in the absence of circumstances showing either a contrary intention or contributing fault on the part of the person subject to the duty, where performance is subsequently prevented or prohibited

... (b) by a judicial, executive or administrative order made with due authority by a judge or other officer of the United States, or of any one of the United States.

We agree with defendant's argument.

The lower court's opinion, refusing n. o. v., says: "The effect of a supersedeas is a suspension or stay of all proceedings by virtue of which the cause would otherwise go forward normally .... Thus, execution of our contempt order was merely stayed, not overruled, by the Superior Court supersedeas pending Appellate Court's determination."

A supersedeas might so provide in any given case. The supersedeas which was granted in this present case, however, ordered defendant "to cease all further attachments of new residential services as required by orders of the Crawford County Court of Common Pleas on May 27, 1975, and June 6, 1975 ...." (Record 126a)

It seems to us, therefore, that NFG's refusal to supply gas to new outlets from October 6, 1975 to November 22, 1976 comes within the general intention of Sec. 458.

The Lower Court, and the plaintiffs argue, however, that even if Sec. 458 were otherwise applicable to this case, it should not be applied to excuse defendant from liability because of "a contrary intention or contributing fault" on the part of the defendant, specifically that defendant "cooperated with the PUC in the latter's obtaining the supersedeas (the Superior Court's Order dated October 6, 1975) and resisting vigorously all attempts of the Plaintiffs to have it removed". (Plaintiffs' Reply to New Matter).

We find no sufficient evidence of "contrary intention" or "contributing fault" of NFG as to the supersedeas order of October 6, 1975. The record is plain that defendant did not

ask for a supersedeas when it filed its appeal from the contempt order of August 12, 1975. It was the PUC which applied for and was granted the supersedeas put into effect by our Court on October 6, 1975. The lower court says in its opinion that plaintiffs established at the trial "that before the Public Utilities Commission intervened it was in touch with the defendant ...." (Appellant's Brief, page 41). We do not believe that this circumstance is nearly enough to establish connivance, contributing fault, or contrary intention of the defendant, which would made Sec. 458 inapplicable to defendant.

Plaintiffs claim further that defendant took itself out of the protection of Sec. 458 by opposing a motion filed by plaintiffs to our Court on March 6, 1976 asking us to remove the supersedeas. The printed record and briefs supplied to us on this appeal give us no sufficient demonstration that defendant's action in opposing plaintiffs' petition of March 6, 1976 was improper so as to make Sec. 458 inapplicable. The plaintiffs' petition[2] concluded with a prayer that the Superior Court "remove the supersedeas entered on October 6, 1975 ...." (Appellees' Brief, page 12b). The defendant's Answer "requests this Court [the Superior Court] to maintain the supersedeas as modified until such time as it decides the jurisdictional issue that is the subject of this appeal." (Appellees' Brief, page 13b).

We hold, therefore, that the refusal, or failure of defendant to supply gas from October 6, 1975 to November 22, 1976, comes within Sec. 458 of the Restatement of Contracts, and that refusal or failure is not a valid basis for plaintiffs' claims for damages.

■ We turn now to the refusal or failure to supply gas from April 1, 1975 to May 27, 1975, and from July 23, 1975 to August 12, 1975. The record seems to establish with reasonable clarity that the defendant's actions in these two periods of time resulted from orders of the PUC which defendant

2. The contents of the petition and the answer are not furnished to us in the record and briefs.

complied with until ordered to take other action by the Crawford County Court.

Admittedly the defendant was a "utility", subject, in the usual order of things, to control and regulation by the PUC. We believe that defendant should not be subjected to liability for damages to others for acts done by it in compliance with the PUC's orders, unless there was evidence of bad faith or malice on defendant's part, or gross negligence. There appears to be no allegation nor evidence of such matters in this case.

Appellant's other arguments on appeal relate to proof of damages and to errors in the trial. Since we hold that the plaintiffs have not made out a case of liability, those other arguments do not require decision by us.

Reversed and judgment n. o. v. entered for defendant.

SPAETH, J., files a dissenting opinion.

SPAETH, Judge, dissenting:

I disagree with the majority's interpretation and application of Section 458 of the Restatement of Contracts, and with its conclusion that the contempt order should not have been received in evidence.[1] In my opinion, instead of granting a new trial, we should affirm.

1. In passing, I agree with the majority's discussion on damages, but believe it to be somewhat incomplete. The majority does not discuss the decisions of this court and the Supreme Court that suggest that lost profits are unduly speculative where a new business is concerned. *See Exton Drive–In, Inc. v. Home Indemnity Co.*, 436 Pa. 480, 261 A.2d 319 (1969), *cert. den.*, 400 U.S. 819, 91 S.Ct. 36, 27 L.Ed.2d 46 (1970); *Pines Plaza Bowling Inc. v. Rossview Inc.*, 394 Pa. 124, 145 A.2d 672 (1958); *Pollock v. Morelli*, 245 Pa.Super. 388, 369 A.2d 458 (1976). These cases are arguably applicable here since appellees were newcomers to the mobile home business when appellant cut off their gas supply. Nevertheless, unlike the plaintiffs in *Exton Drive–In*, *Pines Plaza Bowling Inc.*, and *Pollock*, appellees were able to show that there was significant interest in their product or service before the contract breach occurred. Appellee Gregory Kasemer and Karen Kasemer testified that several people called prior to the gas shutoff to inquire about the mobile homes. Appellant argues that this testimony was highly speculative since these people may not have rented the homes even if there had been gas. That may well have turned out to be true, but I think it better that the jury

−1−

Section 458 of the Restatement of Contracts [2] states:

A contractual duty or a duty to make compensation is discharged, in the absence of circumstances showing either a contrary intention or contributing fault on the part of the person subject to the duty, where performance is subsequently prevented or prohibited

(a) by the Constitution or a statute of the United States, or of any one of the United States whose law determines the validity and effect of the contract, or by a municipal regulation enacted with constitutional or statutory authority of such a State, or

(b) by a judicial, executive or administrative order made with due authority by a judge or other officer of the United states, or of any one of the United States.

The manner in which these principles might be applied is explained in Illustration 3 as follows:

A contracts with B to sell and deliver to him a specific automobile on a certain day, time being of the essence. C, by false allegations of ownership of the machine induces a court having jurisdiction to enjoin A from delivering the machine. In spite of diligent effort A is unable to secure dissolution of the injunction until it is too late to fulfil his contract with B. A's duty is discharged. If C had just

heard this evidence itself and decided its weight, rather than the court excluding it entirely. *Accord S. Jon Kreedman and Co. v. Meyers Bros. Parking–West Corp.*, 58 Cal.App.3d 173, 130 Cal.Rptr. 41 (1976); *Vogue v. Shopping Centers, Inc.*, 402 Mich. 546, 266 N.W.2d 148 (1978); *Fera v. Village Plaza Inc.*, 396 Mich. 639, 242 N.W.2d 372 (1976). *Contra Handley v. Guasco*, 165 Cal.App.2d 703, 332 P.2d 354 (1958); *Adrian v. Rabinowitz*, 116 N.J.L. 586, 186 A. 29 (1936); *Weiss v. Revenue Bldg. and Loan Assn.*, 116 N.J.L. 208, 182 A. 891 (1936).

2. As the majority indicates, at 228, Section 458 has been cited with approval in this state. *See e. g. Burkus v. Henshall*, 386 Pa. 478, 126 A.2d 722 (1956); *Olyphant Borough School District v. American Surety Company of New York*, 322 Pa. 22, 184 A. 758 (1936); *In Re Craven's Estate*, 169 Pa.Super. 94, 82 A.2d 60 (1951). The precise issue presented by the present case, however, has not been decided.

grounds for obtaining the injunction, or if A failed in diligent effort to secure its dissolution, A would not be discharged.

It will be observed that Illustration 3 does not exactly track the black letter of Section 458; indeed, the particular significance of the present case is that it brings this apparently up–to–now unobserved discrepancy to light. Section 458 requires the court to determine whether *in fact* "performance [was] subsequently prevented or prohibited" by a judicial order. Illustration 3 requires the court to determine only whether the promisor made a "diligent effort . . . to secure dissolution of the injunction." Furthermore, it is not clear from Section 458 whether a promisor's consent to or acquiescence in a court order will constitute "contributing fault," whereas under Illustration 3 it seems clear that such consent or acquiescence would be inconsistent with, and would preclude a finding of, a diligent effort to secure dissolution of the order.

I believe that Illustration 3 presents a better summary of the law as it may be found in the cases than does Section 458. In *Peckham v. Industrial Securities Co.*, 31 Del. (1 W.W.Harr.) 200, 113 A. 799, 802 (1921), an oft–cited case on this subject, the court stated:

The promisor is not required to do something that is impossible or unlawful; and he is bound to respect the decree of a court which he can neither change nor remove. But in an honest effort to carry out his agreement he must, if possible, procure the dissolution of the injunction, or secure the dismissal of the interfering proceeding by removing therefor. . . . It must appear that the injunction was not secured by the act or fault of the defendant, and also that *an effort has been made by the defendant, to dissolve the injunction or that such an effort would have been futile, if made.* (Emphasis added.)

*See St. Luke's House, Inc. v. Digiulian*, 274 Md. 317, 336 A.2d 781, 787 (1975); *Kuhl v. School District No. 76 of*

*Wayne County*, 155 Neb. 357, 51 N.W.2d 746 (1952); *Cushman and Wakefield, Inc. v. Dollar Land Corp. Unlimited*, 36 N.Y.2d 490, 369 N.Y.S.2d 394, 330 N.E.2d 409 (1975).

Illustration 3, I suggest, is a fair paraphrase of *Peckham* ; both require the court to determine whether a promisor should be discharged by looking to the effort, if any, that the promisor made to have the court's order dissolved. This determination is quite different from that required by Section 458, which requires the court to determine whether in fact the promisor's performance was prevented by the court's order.

I also believe that Illustration 3 presents a better statement of the law as it should be than does Section 458. Where a promisor is seeking discharge from a contractual obligation, he should have the burden of showing that he did everything reasonably within his power to perform–in the words of *Peckham*, that he made "an honest effort to carry out his agreement." Under Illustration 3 a promisor must make this showing much more clearly than under Section 458; the illustration thus better serves the policy of effectuating the performance of contracts and avoiding forfeitures if at all possible. *Carsek Corporation v. S. Schifter, Inc.*, 431 Pa. 550, 246 A.2d 365 (1968); *Barraclough v. Atlantic Refining Co.*, 230 Pa.Super. 276, 326 A.2d 477 (1974).

In view of these considerations, I should decide this case by applying not Section 458 but Illustration 3. Another way to make this point is to say that I should decide this case by applying Section 458, but only after construing the section to mean not what it literally says but what Illustration 3 says it says.

Here, the period in question is from October 6, 1975, when this court, in response to a petition by the Public Utility Commission, issued a supersedeas ordering appellant–the promisor and defendant below–not to supply gas to appellees, until November 22, 1976, when this court affirmed the lower court's order holding appellant in contempt, whereup-

on appellant resumed supplying gas to appellees. This period may in turn be divided into two shorter periods: from October 6, 1975, to March 6, 1976, when appellees filed a petition to remove the supersedeas; and from March 6, 1976, when we refused to remove the supersedeas, to November 22, 1976.

The difficulty in applying Section 458–if it is construed to mean what it literally says–may be seen if one focuses on March 6, 1976. At that time appellant alone opposed appellees' petition to remove the supersedeas; the Public Utility Commission, which had obtained the supersedeas, did not oppose removal. The majority says that appellant's opposition to removal "is all" that appellant did, at 229, and this "all" did not "take [ ] [appellant] out of the protection" of Section 458, at 229. I assume that the majority means that appellant's opposition did not contribute to this court's refusal to remove the supersedeas, *i. e.*, that we should have refused appellees' petition to remove the supersedeas even if appellant had not opposed removal. I agree that if *in fact* this is true, then, under Section 458, if construed literally, appellant should be discharged from liability for the period of March 6, 1976, to November 22, 1976. However, how can the majority say that it *is* true in fact? Who knows, and who can tell, what factors we thought decisive when we decided not to remove the supersedeas? I submit that whether a promisor should be discharged of his contractual liability should not depend upon the outcome of so uncertain a venture as reading the judicial mind.

If one applies Illustration 3, such a venture becomes unnecessary, and the case may be decided by reference only to facts of record. For it is clear from the record that *at no point* did appellant make a "diligent effort" to dissolve this court's supersedeas.

Certainly appellant's resistance to appellees' petition of March 6, 1976, asking this court to remove the supersedeas, was inconsistent with a "diligent effort" to dissolve the

supersedeas. Thus, appellant should not be discharged of its liability for the period from March 6, 1976, to November 22, 1976.

Nor should appellant be discharged of its liability for the period from October 6, 1975, to March 6, 1976. Although appellant did not join in the Public Utility Commission's petition for a supersedeas, neither did it oppose the petition; only appellees filed an answer in opposition to the petition. N.T. 198. It seems fair to say that appellant sat back and watched as the Public Utility Commission succeeded in getting a supersedeas. Again, such action–or inaction–was inconsistent with a "diligent effort" to dissolve the supersedeas.

In short, the majority, by its application of Section 458, has given appellant the best of all worlds: so long as appellant did not itself request the supersedeas, it could benefit from it, and could oppose its removal, without liability. I regard such a result as both unfair to appellees and contrary to the settled case law that a promisor will not be discharged of his contractual liability unless he has made a "diligent effort" to prevent the order in question–injunction or supersedeas–from becoming, and remaining, effective.

–2–

I also cannot agree with the majority that a new trial is justified in this case because the lower court received in evidence its August 12, 1975, contempt order. This evidence may have been highly prejudicial to appellant, but appellant did not object when the evidence was offered. N.T. 62–63. If counsel does not object to the admission of evidence, he may not argue on appeal that the admission was error. *See* *Capan v. Divine Providence Hospital*, 270 Pa.Super. 127, 410 A.2d 1282 (1979); *Dilliplaine v. Lehigh V. Tr. Co.*, 457 Pa. 255, 322 A.2d 114 (1974).

The judgment of the lower court should be affirmed.